PROVOSTY, J.
By Act No. 5 of 1870, creditors of the city of New Orleans are denied all remedy for the enforcement of their moneyed judgments against the city, except that provided for in the act itself, namely, that the creditor may register his judgment in the office of the comptroller or other auditing officer of the city, and that when the judgment • is so registered “it shall be the duty of the comptroller to warrant on the treasurer or disbursing officer of the corporation for the amount due thereon with.out any special appropriation of money therefor by the common council; provided, always, that there shall be sufficient money in the treasury to pay such judgment specially designated and set apart for that purpose in the annual budget or detailed statement of items of liability and expenditure required by the charter of the city to be made.” The relator’s judgments in this case have been duly registered for several years, but there has been no money in the treasury to pay *375 them, and none has been set apart for that purpose, and they are unpaid. The city authorities are about to prepare the budget for 1903, and the relator prays for a mandamus ordering the city, “through its said council, to set apart in its next budget of receipts and expenditures to be made a sufficient sum with which to pay the judgments of the relator aforesaid.”
There is no dispute as to the facts. The city has no funds out of which the appropriation asked for could be made, unless it be the revenues of 1903; and these revenues constitute a fixed and determinate sum, out of which all expenses and obligations of the city government are to be met. The city does not possess the unlimited right to tax, but its right to tax is limited by the Constitution to 10 mills on the assessment of each year.
The proposition of the relator is, therefore, that the court order his judgments to be paid out of this limited fund.
At once the question arises, what other claims are there entitled to be satisfied out of this fund, and in what order are the claims entitled to be paid?
This question is in part answered by section 2 of Act 32 of 1902, which provides as follows:
“That the revenues of the several parishes and municipal corporations of this state, of each year, shall be dedicated, as follows:. First, all statutory charges shall be paid from the respective funds upon which they are imposed; second, all charges for services rendered annually under time contracts; third, all necessary usual charges provided for by resolution or ordinance. Any excess of revenue over statutory, necessary and usual charges may be applied to the payment of amounts due and unpaid out of the revenues of fórmer years.”
Relator’s judgments fall within the fourth of the categories here created. They are debts of former years, entitled to be paid out of “any excess of revenue over statutory, necessary and usual charges.”
It might be a sufficient answer to relator’s demand to say that, in the absence of all evidence on the subject, this court cannot find, first, that after all “statutory, necessary and usual charges” are satisfied out of the revenues of 1903, there will be a surplus out of which judgments registered under the act of 1870 could be paid; and, second, that relator’s judgments are the only registered judgments against the city, or, at any rate, the first in point of registry, and, as such, entitled to be paid out of such surplus in the event of there being one.
But the case might as well be decided on broader grounds. Relator is not asking that his claim be ordered to be paid out of a surplus, but that it be ordered to be paid absolutely. He is asking that the city be compelled to pay him, even if thereby a part of the revenues of 1903 is to be taken, which would otherwise be attributed by the city authorities to “necessary and usual charges” of the city government.
This cannot be done, for the reason that under the act of. 1902 these “necessary usual charges” are entitled to be satisfied by preference to debts of former years, and that the discretion to determine what are the-“necessary usual charges” of the city government' is confided by law to the city authorities, and cannot be controlled by the courts. To that effect is the express decision of the Supreme Court of the United States in the case of East St. Louis v. United States, 110 U. S. 324, 4 Sup. Ct. 21, 28 L. Ed. 162 (a case precisely in point), where, as here, a mandamus to compel a city of limited taxing-authority to pay a debt was asked in advance of the framing of a city budget; and to the same effect are the cases of Moore v. City, 32 La. Ann. 748, 749, Saloy v. City, 33 La. Ann. 82, and Marchand v. City, 37 La. Ann. 18, where this court based its decision in great part on the proposition that the determination of what amount is required for the necessary expenses of the city government is a legislative, not a judicial, question. Said the court in the Moore Case:
“We are not vested with power to frame a budget for the city of New Orleans; to assume the administration of its affairs; to constitute ourselves, in effect, the mayor and administrators of the city of New Orleans, for the purpose of determining what are and what are not proper or desirable municipal functions to be performed, and what are, or are not, reasonable allowances for the performance thereof. These matters are confided by the law to the discretion and control of the corporate authorities. They have *377 actually framed their estimate and budget of revenues and expenditures, and have appropriated the whole of the ten-mills tax to administrative purposes. If these are excessive or extravagant, the- remedy lies, not with the judiciary, but with the Legislature. The Legislature has the perfect right to limit the administrative expenditures of the ■city. That is a subject within the absolute control of legislative power. It has not done :SO, except within the limit of the ten-mills tax. Holding, first, that the necessary expenses of the city must first be paid out of the proceeds of that tax; and, second, that the determination of what are necessary expenses is not a judicial function, but a function of the municipal government—we find •ourselves unable to give relief against any excessive appropriation within ten mills made for that purpose.”
Relator would have the mandamus issue nevertheless, on the authority of the decisions of this court in the cases of State ex rel. Carondelet Canal Co. v. City, 30 La. Ann. 129; Marchand v. City, 37 La. Ann. 13; and Thorn v. City, 37 La. Ann. 528. But the problem in those cases was entirely different from the problem in this case. In those ■cases the court was dealing with a city unhampered by a limitation upon her right to levy taxes for the payment of her debts, the judgments there in question ■ having been founded on contractual obligations unaffected -by the limitation subsequently Imposed upon the city’s right to tax. ”Of course, a •city that can pay its judgment debts by simply increasing its customary rate of taxation must do so, and mandamus is the proper remedy to enforce the duty. But in the instant case the court has to deal with a city whose right to tax is limited, and that limit reached; a city, therefore, possessed of only a limited fund out of which tó me’et .all obligations. In those cases the proposition was to compel the city to make provision for the payment of her just debts; in the instant case it is to control the city in the distribution or apportionment of the fund placed by law at her disposal for carrying ■on the city government. There is no analogy between the cases.
As for the ease of Stewart v. City, decided by the federal Circuit Court of Appeals for -this circuit, and reported in 49 Fed. Rep., at' pages 40 et seq., also cited by relator in support of his demand, suffice to distinguish it by pointing out that it dealt with a budget already made.
Judgment affirmed.