JOHN L. FINLAYSON *v.* CITY OF SHINNSTON *et al.*

Submitted February 28, 1933.   Decided March 7, 1933.

*Wright Hugus*, and *James A. Meredith*, for plaintiff.
*Hardin R. Harmer*, and *Howard B. Lee*, *R. Dennis Steed*,
*T. C. Townsend*, *Houston G. Young*, and *Hillis Townsend*, for
defendants.

MAXWELL, PRESIDENT:

This suit involves construction of one phase of the consti-
tutional amendment (West Virginia Constitution, Article X,
section 1) adopted by vote of the people of the state at the
general election of 1932.

The amendment provides ''that the aggregate of taxes as-
sessed in any one year'' upon the several classes of property
therein enumerated shall not be in excess of the specified
amounts applicable to the said classes, respectively, except
that the Legislature may provide by general law for limited

increases of maximum rates upon the vote of the people. That exception is not involved in this case and will not be discussed.

The immediate problem for solution is this: Does the amendment require that levies to pay interest and to create sinking funds for bonded indebtedness, whether incurred prior to the amendment or thereafter, shall be within the maximum levies authorized by the amendment, or may they be in addition to the said authorized maximums?

It is the contention of the plaintiff that the maximum levies permitted by the amendment are inclusive of levies for all purposes, including bonded indebtedness.

On the other hand, it is urged by the attorney general, appearing on behalf of the authorities of the city of Shinnston, that the maximum levies permitted by the constitutional amendment pertain only to taxes levied for general or current expenses and do not include taxes levied for the purpose of paying interest on bonds and creating sinking funds for the liquidation thereof.

As appears from allegations of the bill this suit arises in this manner: The city of Shinnston has an outstanding bonded indebtedness of $60,000, residue of two issues, which required last year and will require this year a levy of thirty-five cents on the one hundred dollars property valuation. The magisterial district within which the said city is located has an outstanding bonded indebtedness of $108,000, which requires a levy of twenty-two cents on the one hundred dollars valuation of all property within the district, including the city of Shinnston. The aggregate of the levies to meet the requirements of these obligations is fifty-seven cents. To this there must be added four cents state tax for Virginia debt. In January of this year, for the purpose of improving their city water system, the people of Shinnston voted in favor of an additional bond issue in the amount of $40,000. If such bonds are issued, there will be necessitated an additional levy of eleven and one-half cents. This would make the total levy within the city of Shinnston for bonded indebtedness seventy-two and one-half cents per one hundred dollars of all assessed property.

The plaintiff, a resident property owner of the city of Shinnston, brings this suit on behalf of himself and all other

taxpayers similarly situated, and prays that the public authorities of the city of Shinnston be enjoined from negotiating the proposed issue of $40,000 of bonds for water works improvement, or any of them, and from levying any taxes on account of said proposed bond issue, and from making any levy for taxes on account of the said two existing issues of city of Shinnston bonds "in excess of or in disregard of the limitation set forth in said constitutional amendment."

It is further alleged in the bill, and admitted in argument that the Tax Commissioner of the state, acting under authority of Code 1931, 11-1-2, "has issued an official ruling to the effect that the necessary levies to meet sinking fund and interest payments on outstanding bonded indebtedness and upon bonded indebtedness hereafter created as provided by law may be levied by the respective levying bodies of the state in addition to and independent of the maximum rates provided by said constitutional amendment."

The circuit court of Harrison County refused the award of an injunction as prayed for in the bill. Application was thereupon made to this Court for such injunction.

This court must take judicial notice of matters known of all men. "Courts should take notice of whatever is or ought to be generally known, within the limits of their jurisdiction." 15 Ruling Case Law, p. 1057. Therefore, we note that the burden of taxation in this state has reached the crushing point. It was upon that background that the Legislature in the summer of 1932 submitted to the people of the state a proposed constitutional amendment whereof one of the basic purposes was to place a limitation on direct tax levies, and it was on the same background that the people of the state at the November election adopted the amendment.

Taxes levied by the various tax levying bodies of the state have very generally increased by leaps and bounds within the last decade. And not only that, but the people themselves of many taxation units have authorized bond issues, the interest and sinking funds of which now add substantially to the burdens of taxation. The serious economic depression of the last three years has greatly accentuated the tax situation. The people have come to realize that a public spending program

of exaggerated proportions, such as came into being in the World War period and in the succeeding years of inflation bears heavily upon the people in a period of adversity.

With these undesirable conditions existing, it must be considered that when the people of the state adopted a constitutional amendment providing that *"The aggregate of taxes assessed in any one year * * * shall not exceed"* the maximum levies prescribed by the amendment for different classes of property therein enumerated, the people meant that such prescribed maximum levies should be in fact the outside limit, for all purposes, save only as such course might imperil the integrity of solemn obligations and thereby violate paramount law. We say this because the plain language " *Aggregate of taxes"* means *all the taxes*. Simply that and nothing less. Such plain and unequivocal language leaves no room for interpretation.

This conclusion is emphasized by the fact that although the amendment contains a provision limiting the state tax to one cent on the hundred dollars valuation, after 1933, "except to pay the principal and interest of bonded indebtedness of the state now existing", no such exception appears with reference to the bonded indebtedness of any of the governmental subdivisions of the state. *Enumeratio unius est exclusio alterius.* The conclusion stated is accentuated, too, by the fact that the state senate rejected Senate Joint Resolution No. 1 proposing a constitutional amendment in large measure the same as the amendment later submitted to the people by the Legislature, except that the rejected resolution contained the language: "The limitations contained herein shall not apply to levies for Virginia debt, or levies heretofore or hereafter authorized by a vote of the people under the provisions of section eight, article ten, and the good roads amendment, of this constitution." It therefore seems to have been the intent of both the Legislature and the voters that all levies for governmental subdivisions of the state should come within the maximums fixed by the amendment, except as might be otherwise required by paramount law.

Other provisions of the state constitution must be construed in the light of the amendment.

Let us first consider the case in respect of the $40,000 bond

issue authorized by a vote of the people in January, 1933. It is alleged in the bill ''that it is the expressed intention and purpose of said defendants, the Mayor and Common Council of said city of Shinnston, to lay a levy of 11-½ cents on the $100 assessed valuation, in addition to the maximum levies provided for by the said constitutional amendment to take care of interest and sinking fund on said additional bonds of $40,000 now proposed to be issued, and that they will do so unless prevented by injunction or restraining order * * *.'' As to such proposed indebtedness, there cannot arise any question of the impairment of the obligation of a contract. And, since as we have held above, the effect of the amendment is to fix maximum levies for all purposes except only as precluded by paramount law, it follows that levies for bonded indebtedness created since the adoption of the amendment must fall within the maximums fixed by the amendment. Therefore, no taxing unit of the state may now create a bonded indebtedness for the interest charges and sinking fund for which it will be necessary to lay a levy which cannot be included within the maximums of the constitutional amendment. Taking as true, for purposes here involved, the allegation of the bill that it is the declared intention of the public authorities of the city of Shinnston to lay a levy of 11-½ cents in excess of the maximums permitted by said amendment, for the purpose of meeting interest charges and sinking fund requirements of the proposed $40,000 bond issue, we are of opinion that both the issuance of said bonds and the laying of the proposed 11-½ cent levy should be enjoined until the further order of the circuit court of Harrison County.

With respect to existing bonded indebtedness, it is alleged in the bill that ''the Mayor and Common Council of the City of Shinnston will levy such a proportion of the maximum rates provided by the constitution (amendment) as may be set aside by the Legislature for municipal purposes and for the purpose of carrying on the necessary functions of government; that an additional amount will be levied by said Mayor and Common Council for the purpose of providing the necessary sinking fund and interest payments on bonded indebtedness heretofore created as provided by law * * *.'' Under that allegation, there appearing no necessity to make such

levy in addition to the maximum levies permitted under the constitutional amendment, there must likewise be an injunction restraining the mayor and the common council from laying a levy on account of existing bonded indebtedness over and above the maximums permitted by the constitutional amendment, until the further order of the circuit court of Harrison County. Such is the situation appearing from the allegations of the bill on which this proceeding is based.

This is not to be taken to mean that in no event can the city of Shinnston lay levies in excess of the maximums permitted by the constitutional amendment in order to take care of existing bonded indebtedness, but such course would be justified only to prevent impairment of obligations of contracts involved in the existing indebtedness of the city of Shinnston.

No citizen of the state would have it otherwise than that the solemn obligations of every taxing unit of the state must be preserved inviolate. Such protection of contracts is the mandate of paramount law. The constitution of the United States provides in section 10 of Article I: "No state shall * * * pass any * * * law impairing the obligation of contracts * * *." That provision applies to state constitutional provisions the same as it applies to legislative enactments. *Fisk* v. *Jefferson Police Jury,* 116 U. S. 131, 29 L. Ed. 587. Though the defendants by their demurrer to the bill seek to raise this federal constitutional question, we are of opinion that such question cannot now be further considered than is here indicated. The court takes judicial notice that the legislature is now in session and that questions pertaining to the providing of additional sources of revenue through indirect taxation are receiving legislative attention. The court will not anticipate legislative failure in that particular.

An order will therefore be entered enjoining the public authorities of the city of Shinnston from laying the levies for either the proposed new bond issue or for existing bonded indebtedness, in excess of the maximums permitted by the said constitutional amendment, until further order of the circuit court of Harrison County. And we remand the cause to said court for further proceedings.

*Injunction awarded; cause remanded.*

440

HATCHER, JUDGE, concurring (and speaking only for himself):

A consideration of the nature of the amendment should solve any doubts as to its effect. Is the amendment merely a request to limit levies, or is it a command to do so? If the amendment is precatory, the restricted levies can be extended to meet ordinary governmental expenditures. If mandatory, the levies cannot be increased except for the one purpose—to pay a' pre-existing obligation. It is beyond question that the people are sovereign and that their constituitonal expression is a command. "All provisions are mandatory which expressly or by implication limit the amount of taxes which may be levied." Cooley on Taxation, sec. 173.

There is no reason for believing that the Legislature in submitting the amendment and the people in adopting it, did not use the word "aggregate" advisedly. Article VIII of the constitution of California is analagous to our amendment in that it prohibited the legislature from creating a debt which should "in the aggregate with any previous debts or liabilities exceed the sum of three hundred thousand dollars" except for certain purposes specified in the Article. The Supreme Court of California held in regard to the prohibition: "The language of the article quoted is too clear and explicit to admit of but one interpretation. In fact it would defy the ingenuity of the most subtle intellect to invent a consistent interpretation, other than that which naturally suggests itself from the words of the Article. It is without ambiguity, and expressly forbids the Legislature from creating a debt of more than three hundred thousand dollars, in any way, unless the same is left to the vote of the people. So plain is the meaning of the language, that it is scarcely worth while to invoke rules of construction." *People* v. *Johnson,* 6 Cal. 499, 500-1. Therefore, the words used in the amendment should be given their exact meaning, and as the latest mandate of the people the amendment held to supersede all conflicting provisions and to fix *the absolute limit of direct taxation* except as extended by the organic law, respecting the obligation of a contract. *Mauney* v. *Board, etc.,* 71 N. C. 486; *French* v. *Board,* 74 N. C. 692.

The people in their desperation have cried aloud for relief from direct taxation. It is not for us to question the policy

or ponder the practical effect of the amendment. In *Nougues* v. *Douglass*, 7 Cal. 65, the court held that Article VIII of the California constitution, above referred to, was "an express restriction upon the powers of the Legislature", with no power in the judiciary to interfere "whatever inconvenience may result from a legitimate application of the provision"; and that "so far from the necessary and ordinary expenses of the state forming an exception to the restriction, they were evidently among those especially included in it." If the restriction will produce levies inadequate for public wants, nevertheless the tax rate must be kept within the constitutional limit. We must say as did this Court in reference to the inadequate levies brought about by Article 10, section 7 of our Constitution "all that can be said is 'so the Constitution is written'." *Brannon* v. *County Court*, 33 W. Va. 789, 796, 11 S. E. 34, 36. Accord: *Barksdale* v. *Commissioners*, 93 N. C. 472. We must assume that the Legislature gave due consideration to the reduced amount of revenues which would result from the restricted levies and had in mind plans to supplement direct taxes with indirect taxation wherever necessary. The Legislature must have foreseen that in order for some governmental agencies to function after the adoption of the amendment, revenue in addition to the restricted levies would be imperative. The submission of the amendment to the people was in effect an assurance of the Legislature that it would devise ways to replenish the shrunken treasuries which would follow the adoption. That assurance has been accepted and we must presume that it will be fulfilled. If so, no paramount law will be violated. Why quail at fiscal specters which may never stalk? Jeremiads deserve no heed in our deliberations. The relief sought in this great innovation should be hastened. In furtherance thereof, it is our duty now to construe the amendment literally and await supplementary legislation.