J. Fred Wilson *v.* The County Court of Clay County *et al.*

(No. 7896)

Submitted February 7, 1934.   Decided February 13, 1934.

*Koontz, Hurlbutt & Revercomb, W. Elliott Nefflen, Harry B. Lambert, B. C. Eakle* and *E. G. Pierson,* for appellant.

*Henry N. McLane,* Prosecuting Attorney, *Homer A. Holt,* Attorney General, and *Fred L. Fox,* for appellees County Court and others.

*Brown, Jackson & Knight, Lon H. Kelly, Robt. S. Spilman, W. E. R. Byrne* and *Herman Bennett,* for appellee Young, Moore & Co.

KENNA, JUDGE:

This suit was brought in the circuit court of Clay County, by J. Fred Wilson, a citizen, resident and taxpayer in Clay County, and in Henry District, Henry Independent District and the Town of Clay, as well as a taxpayer in Buffalo District and in Otter District, of that county, against the defendants, The County Court of Clay County, its president and commissioners, the Board of Education of the County of Clay, its president and members, the Town of Clay, a municipal corporation, its mayor, recorder and councilmen and Fred L. Fox, Tax Commissioner of the State of West Virginia. The purpose of the suit is to enjoin levies purposed to be laid by the defendant taxing bodies upon the property of the plaintiff under the provisions of an act of the legislature of the Second Extraordinary Session of 1933, known as House Bill 234, being the enabling act under the provisions of the tax limitation amendment adopted November 8, 1932. The basis of the attack upon the proposed levies is the alleged unconstitutionality of the act of the legislature under which it is averred they are to be laid. A demurrer to the bill of complaint was filed and overruled. The defendants then answered the bill, intervening petitions were filed by Houston G. Young and Harry S. Moore, trading as Young, Moore & Company, and by J. M. Lorentz, a stipulation of fact was made, and the case was submitted to the circuit court of Clay County upon its merits. The court entered its decree sustaining the provisions of the act and refusing the injunction prayed for. This appeal is prosecuted to the final decree of the circuit court of Clay County refusing to award the injunction.

The bill of complaint, the demurrer, answers, intervening petitions, stipulation, exhibits and briefs are voluminous and exhaustive. It is not thought necessary to recount the details of the pleadings and papers that raise the questions to be decided. To do so would be but an unnecessary digression from a discussion of the issues of law before us, perhaps tending to confuse more than to clarify. It is sufficient to say

that the case presents a situation that brings into play, and consequently tests as to validity, the salient features of the act of the legislature known as House Bill 234 and presents them for decision upon this appeal.

The questions thus raised are the following:

(1) May the legislature divide the levies apportioned by it to the taxing units of the state on the basis of requiring approximately thirty per cent thereof to be devoted to payment of existing debt and seventy per cent to current expenses, so that, where essential to prevent the impairment of contracts, excess levies may be laid for debt service above the thirty per cent authorized? Or, phrased differently, can the legislature set apart a portion of the local unit's levying power for current expenses without permitting its entire levying power to be first exhausted for its debt service requirements?

(2) Can such excess levies, if they are permitted to be laid, be laid uniformly on all classes of property, as is provided in the act, or is that particular part of the act invalid and the excess levies, if allowed, required to be classified as are the levies within the limitations?

(3) Can the levies of 12.5 cents and 25 cents on classes 1 and 2 property apportioned by the act to municipalities, be transferred to be laid for district debt purposes in those magisterial districts which contain no municipalities, or should this transfer of levies, as effected by the act, be held invalid as a discrimination in favor of class 3 property and against classes 1 and 2 property in those districts wherein there are no municipalities, and as setting up a ratio of levies not contemplated by the tax amendment?

(4) Does the constitutional amendment require that the ratio of all levies should be the same as the ratio of maximum aggregate levies set up in the constitutional amendment, or may the ratio of levies established by the enactment, which differs therefrom, and is on the basis of 1, 2, 4 and 4, instead of on the basis of 1, 2, 3 and 4, be sustained as an exercise of legislative discretion in substantial conformity with the ratio of levies indicated by the tax amendment?

As to the first question, it is very strongly urged that the principle involved in dividing levies apportioned to the local units on the basis of approximately thirty per cent for debt

service and seventy per cent for current expenses, is contrary to the decision of this court in the cases of *W. E. Bee* v. *City of Huntington, O. O. Eakle* v. *The County Court of Braxton County* and *Jess Snider* v. *W. M. Martin, Assessor, et al.,* 114 W. Va. 40, 171 S. E. 539, heard together and decided September 19, 1933, and usually referred to as the *Bee* case. The legislation before the court in the *Bee* case (Chapter 38 of the Acts of the Legislature of 1933, known as House Bill 314) was based upon a totally different conception of the tax amendment from that involved in the act now under consideration. No effort whatever was made in House Bill 314 to bring all the taxes to be assessed within the limitations. That act simply left the local units free to absorb for current expenses the entire levies apportioned to them, and then to add whatever they required for debt service without regard to the limitation. We held that act bad on that account, taking the view declared in the case of *Finlayson* v. *City of Shinnston,* 113 W. Va. 434, 168 S. E. 479, that the plain meaning of the tax amendment was that all taxes should be brought within the limitations, and that the amendment did not contemplate leaving that question to be determined by the levying bodies. We held that, under the plan of that bill, which left to the local bodies unregulated discretion, debt levies must be preferred in order to carry out the purpose of the tax amendment to limit the expenditures of local levying bodies. Following the course thus plainly indicated, the legislature now asserts for the first time its power, under the amendment, to restrain the local levying bodies in the matter of governmental expense, and to make it obligatory upon them to lay levies for the payment of their debts and for governmental expense within the limitations assigned by the act. The exercise of this power is enjoined by the true meaning of the tax amendment. How this can best be brought about is a matter for legislative, and not for judicial, determination. Whether the legislature has exercised this power to the degree that it should is its own responsibility, provided its act does not appear to be arbitrary or capricious. If the plan adopted is workable as a whole, the fact that in special instances, as in the case before us, it does not bring about the desired result, does not invalidate the plan itself. An analagous rule has been laid down

uniformly in the so-called "special assessment" cases. See *Goldsmith* v. *Prendergast Constr. Co.*, 252 U. S. 12, 64 L. Ed. 427; *Kansas City Ry.* v. *Road District*, 266 U. S. 379, 69 L. Ed. 335; *Milheim* v. *Moffat Tunnel Imp. Dist.*, 262 U. S. 710, 67 L. Ed. 1194.

In the present act, the legislature solemnly declares as a matter of fact, arrived at after careful analysis and consideration, that, on a state-wide basis, thirty per cent of the apportioned levies is reasonably sufficient to meet debt requirements in the levying units and that seventy per cent thereof is indispensably necessary. to meet their current governmental expenses. That declaration is as follows: "Whereas, it has recently been judicially determined that under the tax limitation amendment due provision must be made for the payment of contractual indebtedness from the levies laid thereunder, the Legislature doth further find that on a state-wide basis approximately thirty per cent of said levies is reasonably sufficient to make provision for such indebtedness, and doth further find that approximately seventy per cent of said levies is indispensably necessary for current expenses for the maintenance of indispensable functions of government within the state." The legislative declaration contained in the act before us is quite different from that before the court in *Berry* v. *Fox, Tax Commissioner*, 114 W. Va. 513, 172 S. E. 896, in which the declaration of the legislature was held to be not factual, but made as to a juristical matter. While it is true that such a legislative determination of fact is not necessarily binding upon the courts, nevertheless, unless it appears to be unfounded it should be accepted. *Lemon* v. *Rumsey*, 108 W. Va. 242, 150 S. E. 725; *Woodall* v. *Darst*, 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367; *Block* v. *Hirsh*, 256 U. S. 135, 41 Sup. Ct. Rep. 458, 65 L. Ed. 865, 16 A. L. R. 165. It is this finding of fact and this exercise of legislative power based thereon, that clearly distinguishes the act before us from the act under consideration in the *Bee* case. It is urged that establishing the principle of permitting the legislature to divide the apportioned levies as between current expenses and debt, if carried to its logical conclusion, would permit the legislature to allocate one per cent of the levies, or less, to debt service, and ninety-nine per cent of them, or more, to current expenses, thus vir-

tually placing the enabling act upon the same basis that was declared to be not in accord with the tax amendment by the decision in the *Bee* case. The statement of this proposition is its overthrow. Such an argument presupposes a clear abuse of legislative discretion that this court cannot indulge as a presumption. To the contrary, we must presume that the legislature will always, with care and fidelity, so divide the levies between debts and current expenses as to make adequate and reasonable provision for both within the limitations on a statewide basis. As long as this is so, the legislature must, in enacting enabling legislation under the tax amendment, proceed upon a fundamentally and entirely different theory from that before this court in the *Bee* case as exemplified by House Bill 314. Should it make a division that appeared to be arbitrary and capricious, its exercise of discretion, or its abuse thereof, would be subject to review by the courts. The residuum of the state's power is vested in the legislature, and powers not otherwise disposed of nor prohibited to it by the constitution, are lodged in it. *School District of City of Pontiac* v. *City of Pontiac*, 262 Mich. 338, 247 N. W. 474; *Simmons* v. *Stuckey*, 113 Okla. 200, 241 P. 124; *Commonwealth* v. *Pembroke*, 145 Va. 476, 134 S. E. 717; *Street* v. *City of Columbus*, 75 Miss. 822, 23 So. 773; *Barefield* v. *State*, 16 Ala. App. 491, 79 So. 396; *Ex parte Higgins*, 50 Cal. App. 533, 195 P. 740. The tax amendment is not self-executing, but clearly requires an enabling act to give it vitality. Who, then, is to provide the means of bringing levies for debt, as well as for current expenses, within the limitations? The courts cannot make such provision. To leave it to the levying bodies defeats the purpose of the tax amendment. It is the legislature alone that must place suitable restrictions upon the power to lay levies, in order to give effect to the tax amendment. Exercise of this power by the legislature has received superlative sanction in the case of *City of East St. Louis* v. *Zebley*, 110 U. S. 321, 28 L. Ed. 162, decided by the Supreme Court of the United States. In that case, the legislative limitation of the taxing power of the City of East St. Louis had been prescribed in its charter, and, furthermore, there was charter provision for separating the limited levy on the basis of three-tenths thereof for debt and seven-tenths for current governmental ex-

penses. The question presented was whether the courts could review the current governmental expenses of the city, and could compel the appropriation of a part of the funds raised under the levies for that purpose to the payment of debt. The Supreme Court of the United States held, in substance, that the division of the levy was valid and that that part thereof set apart for current expenses could not, by the courts, be invaded for any purpose whatsoever since the determination of the levies necessary to meet current governmental expenses is a non-judicial function. Implicit in this holding of the Supreme Court is approval of the proposition that where the allocated debt levies are insufficient, they may be exceeded to prevent the impairment of the obligation of a pre-existing contract without encroaching upon that part of the levies set apart to current governmental expense. The same principles as those involved in *City of East St. Louis* v. *Zebley,* will be found discussed also in *Clay Co.* v. *McAleer,* 115 U. S. 616, 29 L. Ed. 482; *Benedict* v. *City of New Orleans,* 111 La. 374, 35 So. 605; *City of Cleveland* v. *United States,* 111 Fed. 341; *Hoard* v. *Chesapeake & Ohio Railway Co.,* 123 U. S. 222, 31 L. Ed. 130.

In addition to exercising a power inherently lodged with it and compelled to be exercised by it, under the true meaning of the tax amendment in limiting and restricting levies to be laid for current expenses, the legislature in the enactment before us has set up, not only a rigid supervision of levies by both the tax commissioner and the courts to the end that the utmost of economy may be effected, but it has set up as well, workable provisions for the uniform transfer of unused levies from one levying unit to the other to be used for debt purposes, thereby exhausting every means for bringing the ultimate aggregate of all levies within the classified limitations of the act, where it is possible that this may be done. These supervisory and restrictive provisions are particularly rigid and particularly readily available in the matter of excess levies, enjoining upon the tax commissioner in the first instance the duty of passing upon the items of current expenses and the validity of the debts for which such excess levies are proposed, and providing recourse, in a proceeding by a tax-

payer, to the circuit court to review his findings, and an appeal from the circuit court to this court.

None of the provisions hereinbefore discussed, either as to the theory of the act or as to the administrative restrictions to be cast upon the local levying bodies in carrying out its provisions, were contained in House Bill 314 which was before the court in the *Bee* case. Therefore, in principle and in method, the bill before us is to be distinguished from that bill. The distinction could be carried further into detail if it were thought advisable so to do. It is, therefore, our opinion that the bill under consideration in so far as it separates levies on the basis of thirty per cent for debt service and seventy per cent for current operating expenses, is consonant with the true intent and meaning of the tax amendment, and, furthermore, that so holding does not infringe upon the fundamental principles laid down in the *Bee* case.

In addition to the specific principles already discussed, the general principles that a legislative interpretation of the constitution is entitled to serious consideration, and that an act of the legislature is to be held valid unless clearly not so, neither of which requires the citation of authority, further argue in support of the act before us.

On the second question, the act provides that when after resort has been had to all the adjustments provided for bringing debt levies within the limitations, with the result that the levies set apart in the act to meet debt service requirements still prove insufficient for that purpose, that then, after following the procedure set up in the act, which is subject to review by the courts, the local unit may proceed to lay uniform excess levies to meet their established debt service requirements. This provision is objected to upon two grounds, (1) that it is not within the power of the legislature to allot a specified levy to debt service requirements on a state-wide basis, and to permit excess levies to be laid when that amount is exhausted; (2) that the uniform excess provision has the effect of working a discrimination in the excess field as compared to the ratio of levies laid within the limitations. The first objection is involved in the discussion of the previous question raised and herein dealt with, and we believe has been, in that discussion, adequately disposed of. It is sufficient to add only

that the legislative limitations are the ones directly applicable to the taxing units throughout the state, and that where the legislature has limited the levies for debt purposes and those levies are not sufficient to meet current debt requirements, they may be exceeded in order to prevent the impairment of the obligation of the pre-existing contract involved.

It may be that the legislature, had it seen fit to do so, might lawfully have provided excess levies on a classified basis of property, yet when it sees fit to make provision for excess levies on a uniform and unclassified basis to meet the requirements of pre-existing debt, it is but, to that extent, preserving the tax structure which existed at the time that such pre-existing debt was contracted by the local unit. Cases permissive of this procedure, and indeed substantially requiring it, are so abundant as to dispense with research. Any discrimination which may be involved cannot find its basis in the contractual obligation. Any such discrimination will be found to be negligible in substance, and in reality, to be the result of expected benefits withheld rather than of an injury inflicted.

As to the third proposition, the question as to the use of the 12.5 cents and 25 cents on classes 1 and 2 property for district debt purposes in districts wherein there are no municipalities (the amounts in the respective classes to be utilized by municipalities otherwise) arises under section 21 of the act. The purpose of this section is to permit those districts wherein there are no municipalities to utilize for district debt purposes the levying power otherwise apportioned by the act to municipalities. This method is objected to because, it is contended, it results in discrimination against class 3 property by forcing it to bear a greater comparative burden for district purposes in those districts wherein there are municipalities than in those districts wherein there are none. This, doubtless, would be so in a substantial sense if the transfer of the 12.5 and 25 cents, respectively, affected the current expense levies of the taxing unit. Inasmuch as the transfer of the 12.5 and 25 cents, respectively, does not affect the current expense levies of the district, but affects only the debt levies, the question becomes largely academic inasmuch as a fixed debt levy is required whether it be within or without the limitations. Of course, it may be urged that the transfer of the 12.5 and 25

cents from municipalities to the district debt levies in districts wherein there are no municipalities, would increase the amount of levies that might be laid within the limitations for debt purposes, and would thus postpone reaching the excess uniform and unclassified levies provided by the act. Since, however, the excess uniform levies on a percentage basis, compared to the classified levies, will fall more heavily on classes 1 and 2 property than upon class 3, this fact would not operate against, but in favor of, the latter class of property, as compared with classes 1 and 2. If complaint is made on behalf of classes 1 and 2 and as against classes 3 and 4 on the basis of the uniform levy, the answer to that objection is that making the excess levies uniform is but preserving the tax structure to which a bondholder, or other creditor, whose debt was incurred prior to the adoption of the tax amendment, was entitled, if necessary, to have substantially preserved for the fulfillment and discharge of his obligation. This is justified by a long line of cases, best exemplified by *Von Hoffman* v. *City of Quincy*, 4 Wall. 535, 18 L. Ed. 403.

Objection is made also to this particular transfer of levies on the basis of its creating a new ratio of levies differing from both the ratio of the maximum levies prescribed by the tax amendment, and from the ratio of the apportionments made throughout the act. The answer to this objection is that, while the maximums of the tax amendment when compared one with the other set up a ratio of classified levies that should be substantially and reasonably followed, this ratio is, by its terms, neither enjoined upon the legislature, nor through the legislature upon the taxing units, and the practical application of the tax amendment through the medium of an enabling act does not admit of its indeviable application. The extent to which this ratio may be departed from is matter of legislative discretion not reviewable by this court in the absence of abuse. In our opinion such departure from the ratio as may be necessary to effect the purpose of this transfer of levying power from one unit to the other is not an abuse of that discretion.

The fourth question is that of ratio. One of the difficulties confronted by the legislature in drafting an enabling act

under the tax amendment was that the amendment, in specifying the maximum rate in each of the four classifications of property, only in class 4 raised the rate in consideration of the fact that the property was located within a municipality. In that class alone, (real estate not occupied by the owner), was it recognized in the tax amendment that property in a municipality would necessarily take a higher rate than if the property were located outside of a municipality. It is obvious that if the tax amendment is interpreted to mean that a municipal tax should be laid only upon property of class four, the probable result would be a discrimination against that class of property, and in favor of homes and intangible personal property located within a municipality. In order to avoid this result, the legislature concluded that levies upon classes 1 and 2, as well as upon class 4, should be apportioned to municipalities.

At the same time, it was apparent by an examination of the tax amendment itself that the rate of $1.50 prescribed as the maximum for class 3 property and $2.00 prescribed for class 4 property, clearly implied that the aggregate of taxes for class 3 should be laid where necessary, and that the aggregate upon the same class and kind of property located within municipalities for other than municipal taxes should not vary from that figure, but should be the same, namely, $1.50. This left fifty cents to be levied for municipal purposes upon class 4 property, or one-fourth of the maximum allowed under the constitutional limitation. Hence, one-fourth of the maximum being established as the municipal rate on class 4 property, it was reasoned that one-fourth of the maximum in classes 1 and 2 would be a proper apportionment for municipal purposes. Taking one-fourth of the maximum rate in each of the three classes taxable within municipalities as being the indicated municipal rate, the ratio of 1, 2 and 4 is established upon property within municipalities. The same ratio results in classes 1, 2 and 3 in districts wherein there are municipalities. Since this ratio is established for municipal purposes, and in districts having municipalities within their borders, and since the only difference between classes 3 and 4 property under the tax amendment is that class 4 is situated within municipalities and class 3 is situated outside of munici-

palities, it seemed that the ratio established as to municipalities, and districts containing them, could be carried to the apportionment of levies for property in districts having no municipalities, in order to render available the intended levies upon class 3 property. We think this is in substantial accord with the purpose of the tax amendment as to ratio of levies.

The provisions of the act of the legislature of the Second Extraordinary Session of 1933, known as House Bill 234, are held valid in so far as they are herein dealt with and in so far as the question of their validity is raised by the pleadings in this case.

Therefore, the decree of the circuit court of Clay County refusing the injunction prayed for and dismissing plaintiff's bill of complaint will be affirmed.

*Affirmed.*

HATCHER, JUDGE, concurring:

I concur only in the result of the majority decision. I am unable to see in House Bill 234 substantial, much less literal, compliance with the tax limitation amendment to the Constitution. However, it has become apparent that the amendment is not workable unless some of the older provisions of the Constitution yield. The majority of the court, in the *Berry* case, has refused to permit the older provisions to yield to the amendment. Therefore the position taken by that majority has made impossible, legislation which will conform to the amendment. I do not recede from my position heretofore taken on the amendment. But in the interest of current government, I accept House Bill 234 as the best enactment the legislature can submit under present judicial restriction.

MAXWELL, JUDGE, concurring:

I concur in sustaining the act, not on the hypothesis that it is distinguishable in basic principle from the act involved in the *Bee* and *Eakle* cases, but because the conclusion is in accordance with the indispensable formula that constitutional government must be maintained, and other things may not be given first place where the functioning of government is endangered.

The reasons for my position are set forth in my dissent in the *Bee* and *Eakle* cases, decided September 19, 1933. Supplementing the authorities there quoted in support of the proposition that the upholding of constitutional government comes first, I refer to the case of *Home Building & Loan Assn.* v. *Blaisdell* (Minnesota Moratorium Case), 78 L. Ed. (U. S.) 413, 54 Sup. Ct. Rep. 231, decided January 8, 1934, wherein appears this pertinent observation:

> "Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. *The policy of protecting contracts against impairment presupposes the maintenance of a government by virtue of which contractual relations are worth while,—a government which retains adequate authority to secure the peace and good order of society.*" (Italics supplied).

In brief, I am of opinion that levies for debts as well as for current expenses of government must come within the maximums prescribed by section 1, Article X, Constitution of West Virginia, as amended November 8, 1932, save only as contractual obligations may thereby be impaired (*Finlayson* v. *City of Shinnston,* 113 W. Va. 434, 168 S. E. 479) ; that maintenance of constitutional government is essential to prevent impairment of governmental contracts (*Bee* and *Eakle* cases, dissent, and *Blaisdell* case, *supra*) ; and that the legislative plan here involved is in recognition of these basis propositions and violates no provision of organic law.

The reasoning of Judge Kenna on all secondary questions involved in the decision has my approval.