APPALACHIAN POWER COMPANY, *etc.*

*v.*

THE COUNTY COURT OF MERCER COUNTY, *etc., et al.*

(No. 12062)

Submitted January 17, 1961.    Decided February 21, 1961.

W. W. Barron, Attorney General, Henry C. Bias, Jr., Assistant Attorney General, Edward B. Simms, Attorney Legal Div. Office of State Tax Commr., Charleston, Roscoe H. Pendleton, Prosecuting Attorney, Mercer County, Princeton, for appellants.

Richardson, Hancock & Coulling, for appellee.

Jeremy C. McCamic, Asst. City Solicitor, Wheeling, amicus curiae, City of Wheeling, a Municipal Corporation.

George G. Bailey, Wheeling, amicus curiae, W. Va. League of Municipalities.

Robert Earl Maxwell, Elkins, amicus curiae, County Court of Randolph County.

CALHOUN, JUDGE:

This case involves a declaratory judgment proceeding instituted in the Circuit Court of Mercer County by Appalachian Power Company, a Virginia corporation, suing in its own behalf and in behalf of all other taxpayers of that county who are similarly situated, against the County Court of Mercer County, a corporation, and the several commissioners thereof, Frank Gibson, Fred Thomason, and Clarence C. Elmore. The parties will be referred to herein as ''petitioner'' and ''respondents'' in accordance with their designation in the trial court.

The purpose of the proceeding is to determine the validity of certain levies laid by the county court pursuant to Chapter 133, Acts of the Legislature, Regular Session, 1959, (Code, 13-1-35).

The case was submitted to the trial court for decision upon an undisputed state of facts established by the petition, an answer in behalf of the respondents, and a written stipulation of fact. From an adverse judg-

ment of the circuit court, embodied in an order entered therein on March 25, 1960, the respondents prosecute this appeal.

Appalachian Power Company is a public utility corporation duly authorized to do business in West Virginia, and in addition to its other holdings in this state, it owns certain real estate and personal property which are subject to the annual *ad valorem* taxes levied by the respondent county court upon real estate and personal property situated within Mercer County. On August 18, 1959, the third Tuesday of that month, the respondent county court ordered the laying of certain tax levies to raise the sum of $523,690, which sum was found by the respondents to be necessary "for county current purposes" for the then current (1959-1960) fiscal year. These levies for current expenses were laid at the maximum rates permitted by Article X, Section 1 of the Constitution of West Virginia, and Chapter 11, Article 8, Code, 1931, as amended.

In addition to such levies for current expenses, the respondents on the same date further ordered that additional levies be laid for the current (1959-1960) fiscal year in order to raise the sum of $29,297 found by them to be necessary "to pay the interest on and provide a sinking fund for the discharge of the principal of bond issues owing by the County as a whole", such portion of the county court's order being designated "Airport Bond Purposes—Interest and Sinking Fund Order." The "airport bonds" in question were issued by the county court on October 1, 1950. The Honorable John A. Field, Jr., who was at that time state tax commissioner, signified to the respondents in writing under date of August 12, 1959, his approval of such levies, but his approval was expressly made subject to the following conditions: "Approval conditioned on not expending funds made available for current expenditures by reason of laying levy for retirement of bonds outside of and in addition to the maximum rates of levy as provided by Article X, Section 1 of the Constitution until such time as the Supreme Court of

Appeals has held Chapter 133, Acts of the Legislature, 1959, to be constitutional or until such time as it appears there will be no test case during the fiscal year." The petitioner asserts that these additional levies are in excess of the maximum levies authorized by Article X, Section 1 of the Constitution of West Virginia and Code, 11-8, enacted in pursuance of such constitutional provision; and that such additional levies are therefore invalid.

In 1932 the voters of West Virginia ratified a constitutional proposal of the legislature which thereupon became Article X, Section 1 of the Constitution of West Virginia. This section is designated "Taxation and Finance" but is popularly known as the Tax Limitation Amendment. It provides, among other things, that "the aggregate of taxes assessed in any one year upon personal property * * * shall not exceed fifty cents on each one hundred dollars of value thereon and upon all property owned, used and occupied by the owner thereof exclusively for residential purposes and upon farms occupied and cultivated by their owners or bona fide tenants one dollar; and upon all other property situated outside of municipalities, one dollar and fifty cents; and upon all other such property situated within municipalities, two dollars; and the legislature shall further provide by general law, for increasing the maximum rates, authorized to be fixed, by the different levying bodies upon all classes of property, by submitting the question to the voters of the taxing units affected, but no increase shall be effective unless at least sixty percent of the qualified voters shall favor such increase, and such increase shall not continue for a longer period than three years at any one time, and shall never exceed by more than fifty percent the maximum rate herein provided and prescribed by law; * * *."

Pursuant to the foregoing constitutional provision, and in order to implement it, the Legislature of West Virginia at its Second Extraordinary Session of 1933 enacted enabling legislation. This legislation, as sub-

sequently amended, appears in the present Code as Chapter 11, Article 8. By Section 5 thereof property is classified for levy purposes into Class I (personalty), Class II (realty occupied by owner), Class III (all real and personal property situated outside of the municipalities, exclusive of Classes I and II), and Class IV (all real and personal property situated inside of municipalities exclusive of Classes I and II). Section 6 provides that "The aggregate of taxes assessed in any one year by all levying bodies * * * shall not exceed fifty cents on each one hundred dollars' assessed valuation on class I property; one dollar on class II property; one dollar fifty cents on class III property; and two dollars on class IV property." Then the legislature allocated among the several taxing units the "aggregate of taxes" established by Section 6. Section 6b allocates to county courts a total of 14.3 cents on each one hundred dollars assessed valuation for Class I property. It will be observed that in all cases the statutory allocation as to Class II property is double the allocation as to Class I, and the allocation as to Class III and Class IV property is four times the allocation as to Class I. Hereinafter all references will be to Class I, it being understood that rates for the other classes are arrived at by applying the proper multiplier to the Class I rate. The 1, 2, 4, 4 ratio was approved in *Wilson v. Clay County Court*, 114 W. Va. 603, 175 S. E. 224.

The maximum of 14.3 cents allowed to county courts is broken down by the statute into several categories, but Mercer County has at present no indebtedness incurred prior to the adoption of the Tax Limitation Amendment, nor are there any magisterial or special taxing districts for which the County Court of Mercer County is required to lay a levy, the result of which is that the entire 14.3 cents would be available for general county current expenses if there were no bonded indebtedness incurred subsequent to the adoption of the Tax Limitation Amendment. The Mercer County airport bonds are such bonds and prior to the levies of

1959 the county court provided the carrying charge on those bonds within and as part of the 14.3 cents limitation.

When the Tax Limitation Amendment was adopted, Article X, Section 8 of the Constitution was not changed. In *Finlayson v. City of Shinnston,* 113 W. Va. 434, 168 S. E. 479, it was held that levies for bonded indebtedness created subsequent to the adoption of the Tax Limitation Amendment must be within the maximum limits prescribed by that amendment.

In 1949 the legislature proposed and the people thereafter ratified an amendment of Article X, Section 8 of the Constitution specifically permitting levies over and above the maximum prescribed by the Tax Limitation Amendment, where bonds issued by any school district are concerned. Section 8, as so amended and as now in force, reads as follows, the matters inserted therein by the 1949 amendment being indicated by italics:

"No county, city, school district, or municipal corporation, except in cases where such corporations have already authorized their bonds to be issued, shall hereafter be allowed to become indebted, in any manner, or for any purpose, to an amount, including existing indebtedness, in the aggregate, exceeding five per centum on the value of the taxable property therein to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness; nor without, at the same time, providing for the collection of a direct annual tax *on all taxable property therein, in the ratio, as between the several classes or types of such taxable property, specified in section one of this article, separate and apart from and in addition to all other taxes for all other purposes,* sufficient to pay, annually, the interest on such debt, and the principal thereof, within, and not exceeding thirty-four years. *Such tax, in an amount sufficient to pay the interest and principal on bonds issued by any school district not exceeding in the aggregate three per centum of such assessed value, may be levied outside the limits fixed by section one of this article*: Provided, That no debt shall be contracted under this section, unless all

questions connected with the same, shall have been first submitted to a vote of the people, and have received three-fifths of all the votes cast for and against the same."

It will be noted that Section 8, as amended, permits levies "outside the limits fixed by section one" (Tax Limitation Amendment) in a specific instance only, that is, where bonds issued by a school district are concerned. Clearly as to all other bonded indebtedness Section 8 constitutes a limitation on incurring bonded debt, and the levies therefor must be within the limits fixed by the Tax Limitation Amendment.

On October 1, 1950, the County Court of Mercer County issued certain bonds which are designated as "airport bonds" pursuant to Article X, Section 8 of the Constitution, the proposal therefor having first been submitted to a vote of the people and approved by the requisite three-fifths vote. The county thus became obligated to pay the principal and the interest thereon within a period not exceeding thirty-four years, and it became the duty of the county court to provide for the collection of a direct annual tax on all taxable property in the county "separate and apart from and in addition to all other taxes for all other purposes, sufficient to pay, annually, the interest on such debt, and the principal thereof, within, and not exceeding thirty-four years." Unquestionably the levy for such bonds was required under the then existing law to be within the maximum prescribed by the Tax Limitation Amendment. *Finlayson v. City of Shinnston, supra.* Apparently the matter was treated and dealt with by the county court in such manner in all of the annual levies thereafter to and including the levies laid in the year 1958.

At the regular session of 1957 the legislature proposed, and the voters of West Virginia on November 4, 1958, ratified Section 10 of Article X of the Constitution, which was designated as the "Better Schools Amendment." With italics supplied to emphasize cer-

tain language deemed pertinent to this case, it reads as follows:

> "Notwithstanding any other provision of the Constitution to the contrary, *the maximum rates authorized and allocated by law* for tax levies on the several classes of property for the *support of public schools* may be increased *in any school district* for a period not to exceed five years, and in an amount not to exceed one hundred per cent of such maximum rates, if such increase is approved, in the manner provided by law, by at least sixty per cent of the qualified voters of the *school district.*

> "Notwithstanding any other provision of the Constitution to the contrary, the *maximum rates* provided for tax levies by *school districts* on the several classes of property may be used entirely for *current expense* purposes; *and all levies required for principal and interest payments on any bonded indebtedness,* now or hereafter contracted, not to exceed five per centum on the value *of the taxable property therein,* the value to be ascertained in accordance with section eight of this article, *shall be laid separate and apart* and in *addition to such maximum rates,* but in the same proportions as *such maximum rates* are levied on the several classes of property."

The act proposing the foregoing constitutional provision, known as Senate Bill No. 312, designated the proposal as the ''Better Schools Amendment'', and directed that the official ballot to be voted by the people thereon should read: ''Ballot on 'Better Schools Amendment' ''.

At the regular session of 1959, the legislature passed two enabling acts designed to carry into effect the Better Schools Amendment to the Constitution. The first of these acts, Chapter 132, came into the Code as Chapter 13, Article 1, Sections 4 and 34, and dealt exclusively with bonds issued by school districts for school purposes. It provided for levying taxes for such purposes ''outside the limits fixed by'' the Tax Limitation Amendment.

The other of the 1959 Acts, the one herein directly involved, is Chapter 133, which came into the Code

as Chapter 13, Article 1, Section 35. This enactment purports to authorize the levying of taxes by *counties and cities* for the payment of principal and interest maturing *"on any bonded indebtedness * * * now or hereafter contracted, * * * which levies shall be laid separate and apart and in addition to the maximum rates provided for tax levies * * ** on the several classes of property specified in section one, article ten of the constitution * * * *and which tax may be levied outside the limits fixed by said section one, article ten* of the constitution."* (Italics supplied.)

The petitioner contends that Article X, Section 10 of the Constitution, the Better Schools Amendment, relates only to levies for school purposes; that its provisions do not grant any additional levying power or authority to county courts; that the airport bond levies are in excess of the maximum limits authorized by the Tax Limitation Amendment and hence are without constitutional authorization; and that, therefore, to the extent that Chapter 133, Acts of the Legislature, Regular Session, 1959, undertakes to confer additional levying power and authority upon county courts, such legislative enactment is unconstitutional.

In support of the position and contentions of the respondents, *amici curae* briefs have been filed in behalf of the West Virginia League of Municipalities and the City of Wheeling, respectively. In support of the position and contentions of the petitioner, an *amicus curae* brief has been filed in behalf of the County Court of Randolph County.

In the final order of March 25, 1960, from which this appeal was taken, the trial court held: "* * * that Article X, Section 10 of the Constitution of West Virginia relates only to public schools and school districts; that Chapter 133 of the Acts of the Legislature of West Virginia enacted at the Regular Session of 1959 and now known as Chapter 13, Article 1, Section 35 of the Code of West Virginia is without constitutional authority and is unconstitutional and invalid; that no

portion of the tax levies laid by the County Court of Mercer County on August 18, 1959, related in any way to public schools or school districts, and therefore said County Court was without authority to and could not legally lay tax levies pursuant to Article X, Section 10 of the Constitution of West Virginia or the aforesaid Chapter 133 of the Acts of the Legislature of West Virginia, Regular Session 1959, at rates in excess of the maximum rates authorized and allocated by law under the other provisions of the Constitution and statutes of West Virginia; and that that portion of the tax levies made by respondents herein on August 18, 1959, which is in excess of 14.3 cents per $100 of valuation on Class I property, 28.6 cents per $100 of valuation on Class II property and 57.2 cents per $100 of valuation of Class III and Class IV property, is invalid and of no lawful force or effect; * * *.''

There being an actual and existing controversy which forms the basis of this case, this declaratory judgment proceeding affords an appropriate remedy for a determination of the questions thereby raised, including a determination of the constitutionality of the legislative enactment upon which the airport bond levies are based. *Farley v. Graney,* (decided December 20, 1960,) 146 W. Va. 22, 119 S. E. 2d 833.

Perhaps it should not be regarded as a fact without significance that the legislature submitted to the voting public the proposed constitutional amendment expressly designated ''Better Schools Amendment.'' On that basis it was submitted to the people and upon that basis the people were authorized to vote either in the affirmative or in the negative. While we feel that the basic question of constitutionality must be determined from the language of the amendment itself, considered purely from the standpoint of good faith, certainly it must be conceded that the legislative designation of the proposal was most unfortunate if, in fact, the language is sufficiently broad to encompass or authorize levies other than for school purposes. Stated otherwise, it must be evident to all persons of average

discernment, certainly to the average voter, that there is a vast difference in connotation between "school bonds" and "airport bonds". The words, "better schools," can not be said to be synonymous with or the equivalent of the words, "better airports."

There is no express reference in the entire amendment to county courts or to municipalities. On the other hand, there are therein the following words and phrases making express reference to schools: "the support of public schools"; "any school district"; "voters of the school district"; and "tax levies by school districts." Apparently it is conceded in behalf of the respondents that the first paragraph relates only to levies by school districts for school purposes, and that its language contains not even the slightest suggestion of authority to make tax levies for any other purpose. Apparently it is further conceded in behalf of the respondents that the constitutionality of the 1959 legislative enactment and the consequent airport bond levies depends upon the italicized words in the following language appearing in the second paragraph of the constitutional amendment in question: " * * * *all* levies required for principal and interest payments on *any* bonded indebtedness now or hereafter contracted, * * *."

At the outset, we observe that the position of the respondents in this respect, based upon so few words of the entire amendment, relating to a matter of such grave significance in the sensitive areas of taxation and constitutional law, is tenuous and a reflection on the capacity of legislative draftsmen to employ clarity of expression in connection with matters of such moment.

The second paragraph of the Better Schools Amendment is composed of a single sentence, which is divided by a semicolon. The portion preceding the semicolon deals with "the maximum rates" provided for tax levies by "school districts." In the portion of the sentence following the semicolon, the phrase "the taxable property therein", obviously refers to the words

"school districts" in the earlier part of the sentence. The words "such maximum rates" used twice in the language following the semicolon obviously refers back to the phrase, "the maximum rates provided for tax levies by school districts," found in the earlier portion of the sentence. Thus it becomes obvious that the phrase, "all levies required for principal and interest payments on any bonded indebtedness" refers to levies by "school districts" for "the support of public schools." Considered in its entirety, therefore, the constitutional amendment in question is clear and unambiguous.

"If a constitutional provision is clear in its terms, and the intention of the electorate is clearly embraced in the language of the provision itself, this Court must apply and not interpret the provision." *State ex rel. Trent v. Sims,* 138 W. Va. 244, pt. 1 syl., 77 S. E. 2d 122; *State ex rel. Zickefoose v. West,* 145 W. Va. 498, pt. 3 syl., 116 S. E. 2d 398. "Plain and unambiguous constitutional and statutory provisions are not subject to judicial interpretation." *Flesher v. Board of Review,* 138 W. Va. 765, pt. 2 syl., 77 S. E. 2d 890. In the case of *May v. Topping,* 65 W. Va. 656, 660, 64 S. E. 848, 850, the Court stated: "The plain terms of this constitutional provision should prevail. A Constitution is made for the people and by the people. The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it; 'for as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or obstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed.' Cooley's Const. Lim. 81.''

We are mindful of the well-settled rule of law that courts are not warranted in declaring legislative en-

actments unconstitutional unless the unconstitutionality is clearly manifest. *Farley v. Graney* (decided December 20, 1960,) 146 W. Va. 22, 119 S. E. 2d 833. On the other hand, when a legislative enactment is clearly unconstitutional, the duty of the Court is plain. "Notwithstanding that an act of the Legislature was enacted with the best of motives and in the interest of good government, if such act clearly violates a provision of the West Virginia Constitution, it is the duty of this Court to declare the act void." *State ex rel. Trent v. Sims,* 138 W. Va. 244, pt. 27 syl., 77 S. E. 2d 122.

The Court is of the opinion that Article X, Section 10 of the Constitution of West Virginia relates only to levies for the support of public schools; that Chapter 133, Acts of the Legislature, Regular Session, 1959, designated as Code, 13-1-35, is unconstitutional; and that the levies which were laid by the respondent county court on August 18, 1959, pursuant to the provisions of that statute are invalid.

For the reasons stated herein, the judgment of the Circuit Court of Mercer County is affirmed.

*Affirmed.*