# CHARLESTON.

PRICE *et al. v.* CITY OF MOUNDSVILLE *et al.*

Submitted February 6, 1897—Decided April 28, 1897.

1. SUPREME COURT OF APPEALS—*Review on Appeal—Constitutional Law.*
   This Court is in duty bound to inquire into the constitutionality of an act of the legislature, when the question is properly presented for its consideration.   (p. 525.)

2. LEGISLATURE—*Title of Act—Object of Act.*
   If the original title of a bill is sufficient, the legislature does not vitiate the legislation by rendering such title more definite and specific during the progress of enactment, if the object of the bill is not thereby essentially changed.   (p. 527.)

3. ACTS OF THE LEGISLATURE — *Journal—Constitutional Law.*
   A mere clerical omission in the journal of either house will not vitiate an act of the legislature, if there is sufficient on the face of the journal to show substantial compliance with constitutional requirements.   (p. 528.)

Appeal from Circuit Court, Marshall County.

Bill by B. W. Price and A. Tomlinson against the city of Moundsville and others. Decree for defendants, and plaintiffs appeal.

*Affirmed.*

J. B. McCLURE, for appellants.

EWING, MELVIN & EWING, for appellees.

DENT, JUDGE :

B. W. Price and A. Tomlinson, citizens and tax payers of the county of Marshall, appeal from the order of the Circuit Court of said county dissolving an injunction awarded them against the city of Moundsville and its officers. The question involved is the constitutionality of the act of the legislature amendatory to the charter of said city, passed on the 9th day of January, 1895. The objections to the enactment are : First, that the title thereof, as passed by the two branches of the legislature, was so materially variant as to make a different enactment by each house, and render the same invalid; second, that the journal of the house does not affirmatively show the bill to have been read three times; third, that the boundaries of the city, as set forth, are not certain and definite.

At the very threshold of the case comes up this inquiry as to whether this Court is bound by the enrollment of the bill, as an absolute verity, and therefore precluded from making inquiry as to whether constitutional requirements have been fulfilled in its enactment. The common law, or English rule, which has been followed by the Supreme Court of the United States, as to congressional enactments, and many state courts, is that the enrollment, ratification, and approval of an act of the lawmaking branch of the government render the same conclusive and unimpeachable, and forever preclude the judiciary from inquiring into the procedure in relation thereto prior to its enactment. In England there is no written constitution controlling the legislative branch of the government, and the acts of parliament, being regarded in their nature as judicial,—as emanating from the highest tribunal in the land, are placed on the same footing and regarded with the same veneration as the judgment of the courts, which cannot be collaterally attacked. With regard to the enactments of congress, there is no provision in the Constitution of the United States authorizing the courts to inquire into their constitutionality, either as to the procedure in enactment, or as to whether the subject-matter of the act conforms to

the constitution. By usurpation, in the first place, as is sometimes claimed, the Supreme Court of the United States invested itself with authority to determine whether an act of congress contravened the express provisions of the Constitution; but when it came to the question as to whether the court should further usurp the right to go behind the solemn authentication of an act, and determine whether, in the enacting procedure, constitutional requirements had been adhered to, the court stopped short, and held that the respect due to co-equal and independent divisions of the government requires the judicial department to rely on the solemn assurance of the legislative and executive departments that in the passage of the act the required constitutional procedure had been fully complied with in all respects. *Field* v. *Clark,* 143 U. S. 649, (12 Sup. Ct. 495). The Constitution of this State is not a grant to, but an express limitation of the powers of, the legislature; and while it divides the government into three co-ordinate departments (the legislative, executive and judicial), and provides that they shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others (Const. Art. V, sec. 1), it imposes on the judiciary the duty of deciding the constitutionality of a law, without limitation; thus not only authorizing inquiry as to whether the act itself is within constitutional limitations, but also as to whether the same has been enacted in conformity with the express mandates of the Constitution. There is no such comity between the separate departments of the state government as would require submission to the alleged acts of each other in violation or defiance of the express requirements of the Constitution. No unconstitutional enactment in this State can interfere with the rights of private citizens unless it is sanctioned by all three of the departments of the State government. The Constitution, as the expression of the will of the people, is the supreme law, and it is the duty of each department of the State government created by it to see that it is preserved inviolate. Their comity is first due to it, and then to each other. If one or more of the departments of the government can wholly disregard and nullify the wholesome provisions of the Constitution, and then impregnably fortify themselves behind their own

solemn authentication, this "solemn authentication" becomes a substitute for the Constitution, and the mere will of the legislative or executive department, or both, becomes the will of the people, and the Constitution is as though it never had been. Being brought into disrespect in one feature, the whole thereof is liable to the same disregard and irreverence. It is not a case of jealousy between the separate departments, but each one, in all its acts, should be ever ready to challenge the most careful scrutiny and investigation into its strict allegiance and loyalty to the spirit and letter of the instrument which gives it existence and clothes it with power. A different rule prevails in other states, dependent upon the provisions of the various constitutions as construed by their courts of last resort. See *Carr* v. *Coke*, 116 N. C. 226, (22 S. E. 16), when the question is fully discussed, with an elaborate note, in 47 Am. St. Rep. 801, 814. To the converse, see *Spangler* v. *Jacoby*, 14 Ill. 297; also 58 Am. Dec. 571, and elaborate note. The rule established in these latter authorities is that "a bill duly enrolled, authenticated, and approved is presumed to have been passed by the legislature in conformity with the requirements of the Constitution, unless the contrary is made to affirmatively appear; and the proof furnished by the journals of the two houses in matters of procedure must be clear and conclusive, to overcome this presumption." The journals must affirmatively show the omission by the legislature of some essential constitutional requirement, to overcome the presumption of validity. Heretofore this Court has followed this rule. *Osborn* v. *Staley*, 5 W. Va. 85.

1. In reference to the question of title: On examination of the journals of both houses, it appears that the act in controversy was introduced into the house under the title of "House Bill No. 15. A bill to amend and re-enact chapter 4 of the Acts of 1889." And under this number and title it was carried through the house. When sent to the Senate, the title was changed so as to read: "An act to amend and re-enact sections 2, 3, 5, 8, 9, 11, 13, 17, 20, 27, 29, 31, 32, 35, and 42 of chapter 4 of the Acts of the Legislature of West Virginia, passed on the 13th day of February, 1889, to amend the charter of the city of Moundsville, and to extend its corporate limits,"—under which

latter title it was carried through the senate, signed by its president and the speaker of the house, approved by the governor and duly enrolled. Section 30, Art VI., of the Constitution, provides that "no act shall embrace more than one object, and that shall be expressed in the title," —thus requiring every act to have a title expressive of the object of the bill. Section 41 provides that each house shall keep a journal of its proceedings, and cause the same to be published from time to time, and all bills and joint resolutions shall be described therein as well by their title as by their number. The only essential requirements as to the title is that it shall express the object of the bill, and there is no provision of the Constitution which inhibits the legislature, during the progress of legislation, from changing the language of the title of a bill so as to render it more definite and specific without altering the object thereof. In this case the original title comprehended everything that was included in the amended title. Had it not done so, there would have been some reasonable grounds of complaint. The change was unnecessary, yet it afforded those interested a larger information of the proposed changes in the law. Hence, it was in no sense misleading, and therefore could not invalidate the enactment. If the original title is sufficient, the legislature does not vitiate the legislation by rendering such title more specific during the progress of enactment, if the object of the bill is not thereby essentially changed.

2. In relation to the failure to read the bill a second time : When it came up in the house in regular order for its second reading, a motion was made to dispense therewith, which was lost. Several amendments were offered, and one adopted, and it was then passed on its third reading. The journal does not say that the bill was read a second time, but it is plainly apparent from what it does contain that this is a mere clerical omission, which, in a court of record, would be amendable on motion. The legislature having expired, its journal is beyond the power of amendment, as there is no one legally authorized to make such amendment. The courts therefore will supply all clerical mistakes in such records, to prevent the failure of a solemn legislative enactment by mere clerical misprision. The legislature having fully complied with the Constitu-

tion, its acts will not be vitiated by a defect in the journal which is shown on the face thereof to be clerical in its nature; for in such case it does not affirmatively appear that the legislature did not conform to the requirements of the Constitution, but the reverse is apparent, though not expressed in so many words. If a journal does not furnish the means of amendment, on its face, as to any essential matter that may be omitted, then the act would be vitiated. Such is not this case, for the second reading is apparent from the journal, though not expressed in words. *State* v. *Francis,* 26 Kan. 732.

3. In relation to the boundaries: The last complaint is that the act does not make the boundaries certain and definite. In what respect plaintiffs are injured by this fact is not made plain in the bill, and, if not injured, they have no right of complaint. The boundary, however, seems to be precise and certain. Natural objects, such as the Ohio river, Grove creek, the penitentiary sewer, and various others, any one of which would give a surveyor a permanent starting point to locate all the lines mentioned, even if the corners were not marked and located on the ground, which is presumably the case. The injunction in this case was awarded for the purpose of giving the plaintiffs an opportunity to be heard in this Court on the novel questions presented by them. When the application was first made to the circuit judge for an injunction, instead of passing on the matter as presented by the plaintiff's bill, he permitted the defendants to also present their answer, and then proceeded to adjudicate the matter as though it were a motion to dissolve, rather than an original application, and refused to award the injunction, thereby depriving the plaintiffs of the right to appeal and have their case heard and determined in this Court; and so the injunction was granted by one of the judges of this Court, as a matter of necessity, to secure plaintiffs the right of appeal. Therefore the circuit court committed no error in immediately dissolving the same, as the object thereof was secured. The error, if any was committed, was by the judge, in allowing the defendants to appear and present answers and make defense before an injunction had been awarded. There is no provision in the law for any such procedure. It is true that a court or judge may require

reasonable notice to be given of the plaintiff's application but he is only to be satisfied with the plaintiff's equity by affidavit or otherwise before he acts thereon; and it is not expected that he shall have the issues made up on a pure bill for injunction on application, and thereby deprive the applicant of all power of appeal from a decision on the merits. In other words, on the original application he must view the case from the standpoint of plaintiff's papers, and, if from these he is satisfied of the equity, he grants the injunction, and requires a sufficient bond to cover the defendant's damages, provided the injunction should afterwards appear to have been illegally awarded. When a circuit court or judge finally hears and determines a case on its merits, he should enter an appealable order, and not one that requires a party to begin anew by application for original process to a judge of this Court. In this case, however, a motion to dissolve would have raised all the questions involved, as they must be tried by the act itself and the journal of the two houses, and the court would judicially take notice of both, as essentially dependent, and an answer was unnecessary. Order dissolving injunction affirmed.

*Affirmed.*