# CHARLESTON.

STALEY *v.* WAYNE COUNTY COURT *et al.*

(No. 6723)

Submitted May 6, 1930.   Decided May 27, 1930.

*Vinson, Thompson, Meek & Scherr,* for appellants.
*M. J. Ferguson* and *W. T. Lovins,* for appellee.

MAXWELL, JUDGE:

By legislative enactment, Acts 1929, c. 123, provision was made for improving a certain county road in Wayne county and for financing the undertaking. The present controversy pertains to a section of that road. The title and sections 3 and 7 of the act are as follows:

"An act to provide for the laying, collecting and expenditure of special levies by the county court of Wayne county, West Virginia, for the years one thousand nine hundred and twenty-nine, one thousand nine hundred and thirty, and one thousand nine hundred and thirty-one, on all the taxable property in Ceredo, Butler, and Lincoln magisterial districts of said county for the purpose of constructing, grading, draining and hard surfacing a county road beginning at a point in State highway number eight, near the foot of Bull mountain and on Bull creek, thence down the waters of Tug river and Big Sandy river to State highway number seventy-five, at a point where the Docks creek road intersects with said state highway, near the Darling farm, and providing for the receipt and disbursement of all moneys raised by said levies. * * *

"Sec. 3. For the purpose of constructing, grading, draining and hard surfacing the main leading county road, beginning at a point where the main leading county road, described in section two of this act, leaves off, that is to say, beginning at the Butler magisterial district—Ceredo magisterial district line near Centerville; thence down White's creek to a concrete arch bridge near the residence of G. W. Staley, across White's creek; thence following or near the present county road on the west side of White's creek down to the crossing across White's creek at the Phenix farm; thence with or near the present county road from that point to Cyrus, near the mouth of White's creek; thence down Big Sandy river with or near the present county road, to the mouth of Docks creek; thence up Docks creek to the point where the said Docks creek road intersects with State highway number seventy-five at or near the Darling farm, Ceredo magisterial district, Wayne County, West Virginia, the county court of said county is hereby authorized to lay a special levy on all the taxable property within

the said Ceredo magisterial district for the years one thousand nine hundred and twenty-nine, one thousand nine hundred and thirty and one thousand nine hundred and thirty-one, not to exceed thirty cents on the one hundred dollars valuation of said property as assessed for regular state, county and district taxation; and the said levy shall be called 'the special county road levy of Ceredo magisterial district,' and the funds derived therefrom shall be used for said purposes and for no other purpose. * * *

"Sec. 7. It is further provided that should the citizens and voters of Ceredo magisterial district vote a bond issue to build roads in Ceredo magisterial district, which includes the roads described in sections three and four of this act, at any time before the second Tuesday in August of the year, one thousand nine hundred and twenty-nine, then this act, so far as it provides for the laying of a special levy of thirty cents in Ceredo magisterial district, shall be void but all other parts of this act shall remain in full force and effect."

The Wayne county court, at the levy term in 1929, laid levies in Butler and Lincoln districts as provided in the above act; as to Ceredo district, however, in June, 1929, the voters therein voted a bond issue for road purposes amounting to $400,000. The proclamation for the bond election described various sections of road to be constructed or improved. The section particularly applying to the Whites creek road follows: "5. Beginning at the Big Sandy road at Cyrus, thence running up Whites creek to the Union district line a distance of 4.8 miles, 2.45 miles to be graded and 4.8 miles to be gravel, slag or stone surface."

The county road engineer prepared plans and specifications for the construction and improvement of the roads designated under said bond issue. The Whites creek road, known as Project 135, was located by the county court on the *east* side of Whites creek between the "arch bridge" and the "Phenix farm" crossing. By reference to section 3 of chapter 123, Acts 1929, supra, it will be seen that the Legislature located this road on the *west* side of Whites creek between the two points above mentioned. Herein the controversy arose.

Plaintiff, Walter Staley, is the owner of a farm on Whites creek in Ceredo district. The location of the road as proposed by the county court, that is, on the east side of Whites creek would follow a graded county road running at some distance from his house, yet through a portion of his farm. The location of the road as stipulated in chapter 123, supra, that is, on the west side of Whites creek, would follow another old county road not graded, but running through his farm and near his residence. Plaintiff contends that the latter road is the one which the Legislature by express direction intended should be improved, and accordingly he instituted this suit and obtained an injunction inhibiting the county court from improving the road on the east side of Whites creek, and requiring the county court to improve the road on the west side of the creek between the "arch bridge" and the crossing at Phenix farm. This appeal followed.

The case turns on one question. Is the location of the Whites creek road a matter for legislative determination? The state Constitution provides in article 6, § 39, that "the Legislature shall not pass local or special laws in any of the following enumerated cases; that is to say, for * * * laying out, opening, altering and working roads or highways; * * *" Appellee contends that the Legislature, by chapter 123, Acts 1929, is not attempting to lay out, open, alter, or work the Whites creek road. He says in effect that the underlying purpose of the statute is to provide funds for improving an existing county road by special levy as to two districts and by levy or bond issue as to Ceredo district; that the very title of the act precludes the idea of locating a road. True, the title of the act, recites, "An Act to provide for the laying, collecting and expenditure of special levies," etc., but, in providing for the levy or bond issue, the Legislature in its enactment under said title likewise attempts with great particularity to locate the exact route of the road upon which the money is to be expended. Such enactment cannot be harmonized with the constitutional inhibition above quoted.

Another Constitutional provision must likewise be considered. Constitution of West Virginia, art. VIII, Sec. 24. It

declares in part: "They [the county courts] shall also, under such regulations as may be prescribed by law, have the superintendence and administration of the internal police and fiscal affairs of their counties, including the establishment and regulation of roads, ways, bridges, public landings, ferries and mills, with authority to lay and disburse the county levies." The establishment of roads is thus made a special duty and responsibility of the county courts. This requirement is evidently based upon the very reasonable conception that such tribunals are in much better position to know and appreciate the needs of the people of their respective counties as to county roads than is the Legislature. The latter body, composed of members from all counties of the state, could scarcely be expected to be acquainted with the needs of a particular county as to the location of one of its roads for the best interest of its citizens. A matter of that sort is peculiarly one of local concern. In fact, all of the matters enumerated in the last above quoted section of the Constitution are so obviously matters to be controlled by local governmental agencies rather than by the Legislature that demonstration of the subject, other than by mere statement thereof, is difficult.

In determining that the road on the west side of Whites creek should be improved, the county court followed the route that seems to have been indicated by the proclamation to the voters of Ceredo district for the bond election. We say "seems to have been indicated" because it appears from the record that, at the time of the submitting of the proposed bond issue to a vote of the people, 2.35 miles of the road on the east side of the creek had already been graded. The section of 2.45 miles mentioned in the proclamation evidently was the portion of the entire distance of 4.8 miles yet to be improved. At that time the road on the west side of the creek was unimproved. Syllabus 3 of *Chrystal* v. *Preston County Court,* 83 W. Va. 114, 97 S. E. 606, thus states the law: "By the Constitution and statutes of this state county courts are given jurisdiction of the establishment and regulation of roads, and, unless restricted by conditions in the order submitting a bond issue election to a vote of the people, necessarily have a wide discretion as to the location of such roads and the order in which

they shall be improved.'' Or, even considering the case in the light most favorable to appellee, namely, that the proclamation did not definitely locate the road, then we have in *Brown* v. *Preston County Court,* 78 W. Va. 644, 90 S. E. 166, 167, the following proposition in syllabus 2: ''When at an election so held and conducted the voters authorize a bond issue for the improvement of a road between certain designated points connected by two roads virtually of the same general character and length, neither of them being specifically mentioned in the petition or order of submission, the county court is vested with ample authority to determine which road it will undertake to improve by the expenditure of the proceeds of such authorized bond issue.''

The appellee takes the position that the county court, by reason of having laid the levy in Lincoln and Butler districts, and having caused a bond election to he held in Ceredo district, all under the provisions of said act, is estopped by its said conduct to challenge the constitutionality of the act with reference to the attempted location of said road. It is readily seen, however, when attention is called to it, that these are separate matters. They are not necessarily interdependent. Though the county court may have proceeded to raise funds under the act, it does not follow that it is thereby precluded from exercising its constitutional discretion in the establishment and management of roads and from urging the unconstitutionality of the act in so far as it undertakes to particularize the roads upon which the funds are to be expended. It is, of course, familiar law that a statute may be in part constitutional and in part unconstitutional. 36 Cyc. 976; Cooley's Cons. Limitations (8th Ed.) p. 360. And again, an estoppel cannot be employed to effectuate an illegality. 21 Corpus Juris, p. 1200; *New York & O. M. R. Co.* v. *Van Horn,* 57 N. Y. 473. A constitutional provision cannot be emasculated by estoppel.

In the light of the foregoing, the injunction restraining the county court from improving the road on the east side of Whites creek and requiring the construction of the road on the west side of said creek should be dissolved. An order to that effect will be entered here.    *Reversed and rendered.*