STATE EX REL. COUNTY WELFARE BOARD OF STARKE COUNTY ET AL. *v.* STARKE CIRCUIT COURT, MURRAY, JUDGE, ETC.

[Nos. 29,617 and 29,621. Filed February 4, 1958. Rehearing denied March 13, 1958.]

*Nichols & Nichols,* of Knox, for relators.

*Paul E. Reed,* of Knox, for respondents.

BOBBITT, J.—Because these cases involve the same parties and subject matter, and present the same question for our determination, they are here consolidated and so treated in this opinion.

In Case No. 29,617 relators seek a writ of prohibition prohibiting respondents from enforcing an order entered, *sua sponte,* on December 4, 1957, requiring the Starke County Welfare Board and the director thereof to make available for the court's inspection "all the case histories and all other relevant papers connected with the administration of the welfare program in Starke County," Indiana, in order that respondent Jack Murray, as Judge of the Starke Circuit Court, could conduct "a full and intensive case by case study of the Welfare Department's activities."

On December 11, 1957, relators, in compliance with Rule 2-35 of this court, filed their motion to set aside and expunge from the records the court's order of December 4, 1957, which motion was overruled.

We issued a temporary writ.

In Case No. 29,621 relators seek a writ of mandate to compel respondents to return all records and papers of the relators impounded by respondents under an order of such court issued *sua sponte* on December 12,

1957, ordering and directing the sheriff of Starke County, Indiana, "to impound all the records and papers . . . of the Starke County Department of Public Welfare and the Starke County Board of Welfare," which were then located in the Welfare Office at Knox, Indiana, and transfer the same immediately to a certain room in the Starke County Courthouse. This order further provided that the sheriff should have the only key to such room and was to allow no one, including the judge of the court, to enter the room or to permit the removal of any of such seized records or papers until further order of respondent court. The sheriff, on December 12, 1957, impounded such records and papers in accordance with such order.

On December 17, 1957 relators filed their motion for the return of such impounded records and papers.

On December 26, 1957 relators filed this action for mandate, alleging, *inter alia,* that respondents have failed to act upon their motion for the return of such records and papers.

We issued an alternative writ, returnable January 20, 1958.

Verified returns have been timely filed in both cases.

The sole question presented is whether or not the respondents have the jurisdiction and power to issue and enforce the orders entered in respondent court on December 4, 1957, and on December 12, 1957, as heretofore mentioned.

Relators assert that respondents are without jurisdiction and authority to issue either of such orders, and that both are unlawful and void.

The source of the jurisdiction and power of courts in Indiana is ably defined in *State ex rel. Wilson* v. *Howard Circuit Court* (1957), 237 Ind. 263, at pp. 267, 268, 145 N. E. 2d 4, at page 7, as follows:

"The power [of a court] to entertain any matter and to act therein must come from the Constitution or from some statute. 'This power to act judicially is limited to that given to courts by the law of the land, and cannot be conferred by the consent or request of parties in cases where the court would otherwise be without it. It is the law which gives jurisdiction, and it must follow as a fundamental rule, applicable to all cases, that such jurisdiction can be invoked only by some method known to the law.' City of Indianapolis v. Hawkins (1913), 180 Ind. 382, 384, 103 N. E. 10, 11, supra. 'The jurisdiction and duties of a circuit court of the State of Indiana, and the methods prescribed by which the court shall exercise its jurisdiction, must be conferred by constitutional and legislative authority.' State ex rel. Robertson v. Circuit Court of Lake County (1938), 215 Ind. 18, 23, 17 N. E. 2d 805, 808, supra. ' " Jurisdiction is grounded on constitutional or statutory authority, the existence of which is always a judicial question," Warren v. Indiana Telephone Co. supra [ (1940), 217 Ind. 93, 26 N. E. 2d 399].' State ex rel. Standard Oil Co. v. Review Bd. (1951), 230 Ind. 1, 14, 101 N. E. 2d 60, 66."

Article 7, §8 of the Constitution of Indiana provides as follows:

"The Circuit Courts shall each consist of one Judge, and shall have such civil and criminal jurisdiction as may be prescribed by law."

The legislature may confer upon judges powers that are not strictly of a judicial character, *City of Terre Haute et al.* v. *Evansville and Terre Haute R. R. Co.* (1897), 149 Ind. 174, 46 N. E. 77, 37 L. R. A. 189; and may define the jurisdiction of circuit courts. *Board, etc.* v. *Albright* (1907), 168 Ind. 564, 81 N. E. 578; *State ex rel. Gannon* v. *Lake Circuit Court* (1945), 223 Ind. 375, 61 N. E. 2d 168

In *County Dept. of Pub. Welfare* v. *Potthoff* (1942), 220 Ind. 574, 580, 44 N. E. 2d 494, this court said:

"Our public welfare act must, of course, be read in connection with the Social Security Act of the Congress of the United States of August 14, 1935 (Title 42, §301 to §306, USCA). Together, these acts constitute what has come to be known as grant-in-aid legislation . . . ."

The State of Indiana has, in compliance with federal requirements,[1] provided for the administration of federal grants-in-aid of public welfare programs by the establishment of a State Department of Public Welfare. Sections 52-1101 to 52-1116, Burns' 1951 Replacement, being part of Chapter 3, Acts 1936 (Spec. Sess.), as amended.

None of the federal statutes[2] referred to above confer any power upon a circuit court to seize or impound any records of the County Department of Public Welfare for the purposes stated in the orders of the Starke Circuit Court here in question, or for the purpose of determining whether or not the members of such Board were fully performing their respective statutory duties.

Acts 1947, ch. 83, §1, p. 251, being §52-1118, Burns' 1951 Replacement, *supra,* provides, in part here pertinent, as follows:

"The county board of public welfare shall consist of five [5] members, who shall have been legal residents of the county for a period of at least two [2] years prior to the date of their appointment, who shall be persons having a recognized interest in and knowledge of the problems of public welfare, and shall be appointed by the judge of the circuit court: . . . . Any vacancy

---

1. Requirements of a State administrative agency in the administration of various federal programs here involved are set forth as follows: Old Age, 42 U. S. C. A. Section 302; Aid to Dependent Children, 42 U. S. C. A. Section 602; Crippled Children, 42 U. S. C. A. Section 713; and the program for the blind, 42 U. S. C. A. Section 1202.

2. See Note One.

occurring for any cause in the membership of the board, shall be filled for the unexpired term by the judge of the court authorized to make the appointment. . . . . The judge of such court may, at any time, remove any member of the county board of public welfare for misconduct, incapacity or neglect of duty, after due notice in writing."

The power granted to judges[3] of the circuit courts under the provisions of the Welfare Act above quoted, does not include the right to order, *sua sponte,* County Welfare Boards to deliver their records into their courts, or to impound them for the purpose of using them in determining whether or not there has been any misconduct, incapacity or neglect of duty among the members of the County Welfare Board; nor is such right or power incidental or necessary to the determination of such question.

We find no constitutional or statutory provision which grants to circuit courts the power and authority, *sua sponte,* to compel the County Welfare Board to make available for the court's inspection all welfare department records and papers for the purpose of conducting an investigation of the administrative functions of such Board; nor do we find any authority for the issuing of an order such as that involved in the cases here before us.

Respondents assert that they are not trying to substitute their judgment for that of the County Welfare Board, nor are they, by their actions, attempting to administer the county welfare program, but are "merely seeking to determine if the Welfare Board Members have been guilty of any Misconduct, Incapacity or Neglect of Duty," for the purpose of taking appro-

3. See: *State ex rel. Newkirk* v. *Sullivan Circuit Court* (1949), 227 Ind. 633, 638, 88 N. E. 2d 326, where this has been held to mean the court and not the judge as an individual.

priate steps for removal of the members if any cause therefor is found.

A member of the County Welfare Board is a public officer as distinguished from an employee, and he cannot be removed without a hearing in which he has the right to a trial of the issues. *State ex rel. Newkirk* v. *Sullivan Circuit Court* (1949), 227 Ind. 633, 638, 88 N. E. 2d 326.

Relators assert that, by their attempt to conduct an administrative review such as has been undertaken here, respondents are violating Art. 3, §1 of the Constitution of Indiana, which provides as follows:

"The powers of the Government are divided into three separate departments: the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

Respondents, in their return, assert (1) that they "would have no way to determine whether there was any Misconduct, Incapacity or Neglect of Duty, on behalf of any of the members of the Welfare Board" unless respondent judge "could actually inspect the case records, case histories and other relevant papers"; and that hence they are "legally and morally compelled in the interest of insuring a proper administration of the public assistance program in Starke County, to conduct an immediate case by case investigation" for the reasons above mentioned. Respondents may feel that the County Department of Public Welfare of Starke County is not being properly administered, and that it is their "moral duty" to see that this is done. However, circuit courts do not act under the authority of "moral duty" but under powers

and authority granted by the Constitution and the statutes of Indiana, except in such cases as courts may act under their inherent power.

The functions which respondents here propose to exercise are purely executive and administrative, and not only is there no constitutional or statutory provision which vests such authority in the circuit court, but the supervisory power over the administration of County Departments of Public Welfare is specifically lodged in the State Board of Public Welfare. Acts 1947, ch. 200, §1, p. 642, being §52-1103, Burns' 1951 Replacement, and Acts 1945, ch. 349, §3, p. 1677, being §52-1104, Burns' 1951 Replacement.

(2) Respondents also assert that because they act in certain instances as a juvenile court and make dependent, neglected or delinquent children wards of the court or the County Welfare Department (Acts 1945, ch. 356, §15, p. 1724, being §9-3215, Burns' 1956 Replacement), and that because the circuit court in counties such as Starke works closely with the Public Welfare Department in numerous matters, "this close linkage would of itself give the Respondents the right to inspect the case records, histories and other relevant papers of all such dependent, neglected or delinquent children—if only to satisfy Respondents that the county's money is being spent properly and in compliance with the Court's orders of wardship."

This relationship confers no authority upon respondents to order the records and papers into court for inspection by the judge or to impound them for the same purpose.

(3) Respondents further assert that the State and Federal Acts[4] which make certain welfare records and

---

4. 42 U. S. C. A., §302(a) (8); 42 U. S. C. A., §602(a) (8); 42 U. S. C. A., §1202(a) (9); and Acts 1936 (Spec. Sess.), ch.

case histories unavailable for inspection are unconstitutional. However, we are not required to decide this question. Assuming that such Acts are unconstitutional, such a situation would not create or provide authority for respondents to conduct an administrative review of the records of the County Department of Public Welfare.

Respondents ask in their verified return, ". . . is not Respondents' inquiry into the Starke County Welfare program directly connected with the administration of Public Assistance?" We agree that this is true but, being true, it provides an additional reason why respondents were without authority and power to enter the orders herein.

That the circuit court cannot perform administrative duties of the County Department of Public Welfare has already been decided by this court.

In *State ex rel.* v. *Circuit Court of Jay County* (1943), 221 Ind. 204, 46 N. E. 2d 490, the circuit court of Jay County was prohibited from administering certain funds held by the Welfare Department and from appointing a receiver to take charge of such funds, together with all the records, books and papers pertaining thereto, and at page 207 of 221 Ind., this court said:

". . . courts have no jurisdiction to . . . take over the official duties of public officers in the legislative or executive branches of the government. No person charged with official duties under one of these departments may exercise any of the

3, §14a, as added by Acts 1947, ch. 200, §2, p. 644, being §52-1113a, Burns' 1951 Replacement; and Acts 1955, ch. 206, §1, p. 549, being §52-1260, Burns' 1951 Replacement (Cum. Supp.); Acts 1955, ch. 206, §2, p. 549, being §52-1260a, Burns 1951 Replacement (Cum. Supp.); and Acts 1955, ch. 206, §3, p. 549, being §52-1260b, Burns' 1951 Replacement (Cum. Supp.).

functions of another, except as is expressly provided in the Constitution (§1, Art. 3, Constitution of Indiana)."

(4) Respondents also assert "that the paying public has the constitutional right to know how their money is being spent." This is also true, but it furnishes no authority for, nor does it confer any power upon, respondents to enter and enforce the orders herein.

(5) Respondents rely upon the Acts of 1953, ch. 115, §3, p. 427, being §49-3906, Burns' 1951 Replacement (Cum. Supp.), to support their actions herein. This Act provides that:

"Except as may now or hereafter be otherwise specifically provided by law, every citizen of this state shall, during the regular business hours of all administrative bodies or agencies of the state, or any political subdivision thereof, have the right to inspect the public records of such administrative bodies or agencies, and to make memoranda abstracts from the records so inspected."

It is not necessary to decide here whether or not the records and papers which respondents have impounded are within the provisions of ch. 115, *supra,* but it is sufficient for the purpose of this opinion to note that this Act (ch. 115, Acts 1953) does not, either directly or indirectly, authorize respondents to seize all the records and papers in the office of the County Department of Public Welfare, or to order them to be brought into court for inspection by the judge.

Respondents also rely upon *State ex rel. Haugland* v. *Smythe* (1946), 25 Wash. 2d 161, 169 P. 2d 706, 165 A. L. R. 1295, and *Bell* v. *Bankers Life & Casualty Co.* (1945), 327 Ill. App. 321, 64 N. E. 2d 204, to support their position herein.

The question before the court in the Haugland Case was: Does a judge of the superior court, while con-

ducting a juvenile case, have the right by subpoena *duces tecum* to compel an administrator of the county welfare department to produce in court the original confidential file of such department concerning a delinquent minor child, for inspection and use of such file by the juvenile court *in the matter then pending* and affecting the delinquent minor?

In the Bell Case the sole question related in any way to the case at bar was whether or not certain records of the Cook County, Illinois, Bureau of Public Welfare were competent evidence to establish the age of an insured in an action to recover the proceeds of a life insurance policy.

The circumstances in these cases were so foreign to those in the cases at bar that neither of them lend any support to respondents' position herein.

(6) Finally, respondents assert that they acted "pursuant to the inherent power of the Starke ■ Circuit Court." The inherent power of courts has been ably defined in *Little* v. *The State* (1883), 90 Ind. 338, 339, 46 Am. Rep. 224, as follows:

"The judiciary is a co-ordinate department of the government, and is not a mere subordinate branch, dependent for existence and power upon the legislative will. Purely judicial powers, inherent in courts as of the essence of their existence, are not the creatures of legislation, and these powers are inalienable and indestructible.";

and in *Patterson* v. *Pollock* (1948), 84 Ohio App. 489, 84 N. E. 2d 606, 611, where, quoting from 14 Am. Jur., Courts, §171, p. 370, it is said:

" 'The "inherent powers" of a court are such as result from the very nature of its organization and are essential to its existence and protection and to the due administration of justice. It is fundamental that every court has inherent power to do all things that are reasonably necessary for

the administration of justice within the scope of its jurisdiction.' "

We do not believe that an administrative review, such as has been attempted by respondents herein, is "of the essence" of the existence of the Starke County Circuit Court; nor is it necessary for the "administration of justice within the scope of its jurisdiction."

The purpose sought to be accomplished by the acts of respondents herein may be ever so worthy, and it may well be that the respondent judge would conduct a more economical administration of the Starke County Department of Public Welfare than that being administered by the present County Welfare Board, but the Legislature, even if it had the power so to do—a question we need not and do not here decide—has not vested the circuit court with the power or authority either to administer the County Department of Public Welfare or to conduct an administrative review thereof.

There are ample means whereby respondents could determine, in a proper proceeding, whether or not relators are guilty of misconduct, incapacity or neglect of duty, without resorting to autocratic and arbitrary methods which they clearly have no authority or power to pursue.

For the foregoing reasons it is our conclusion that respondents were wholly without jurisdiction to enter the orders in both cases herein.

The temporary writ of prohibition heretofore issued in Cause No. 29,617 is made permanent; and the alternative writ of mandate heretofore issued in Cause No. 29,621 is made absolute.

Emmert, C. J., Landis, Achor and Arterburn, JJ., concur.

NOTE.—Reported in 147 N. E. 2d 585.