STATE *ex rel.* STATE BUILDING COMMISSION OF WEST VIRGINIA, *a public corporation, and* HULETT C. SMITH, *Governor and Ex-Officio member and Chairman of such Commission*

*v.*

ROBERT D. BAILEY, JR., *Secretary of State* OF THE STATE OF WEST VIRGINIA

(No. 12582)

Submitted September 7, 1966. Decided October 11, 1966.

*Thomas B. Yost,* Assistant Attorney General, for relators.

*C. Donald Robertson,* Attorney General, *Leo Catsonis,* Assistant Attorney General, for respondent.

HAYMOND, JUDGE:

This is an original proceeding in mandamus instituted in this Court on June 27, 1966, in which the petitioners, State Building Commission of West Virginia, a public corporation, and the Honorable Hulett C. Smith, Governor and Ex-officio member and chairman of such commission, seek a writ to require the defendant, Honorable Robert D. Bailey, Jr., Secretary of State of the State of West Virginia, to affix his signature and to attach the Great Seal of the State to a certain temporary bond certificate in the amount of $250,000.00, prepared and issued by the governor pursuant to an order of the commission at its meeting on May 17, 1966. By letter dated June 9, 1966, the defend-

ant declined and refused to perform the foregoing acts for the stated reason that the statute authorizing such certificate, Senate Bill No. 42, enacted by the Legislature at its regular session, 1966, in effect from its enactment on February 9, 1966, is unconstitutional as violative of Article V of the Constitution of this State.

Upon the petition and its exhibits this Court issued a rule returnable September 7, 1966, at which time the defendant appeared and filed his written demurrer and answer to the petition. The answer admits the material facts set forth in the petition and on the return day of the writ this proceeding was submitted for decision upon the foregoing pleadings and the written briefs of the attorneys for the respective parties.

The statute, the constitutionality of which is challenged in this proceeding, introduced as Senate Bill No. 42, is Chapter 8 of the Acts of the Legislature, Regular Session, 1966, and amends and reenacts Sections 1, 2, 3 and 7, Article 6, Chapter 5, of the Code of West Virginia, 1931, as amended.

Section 1 provides that the State Office Building Commission of West Virginia, previously created by the original statute, Chapter 43, Acts of the Legislature, Regular Session, 1939, shall continue in existence but shall be known and designated as the State Building Commission of West Virginia after the effective date of the statute and shall continue as a body corporate and as an agency of the State. This section also provides that the commission shall consist of the governor, the attorney general, the treasurer, the auditor, the commissioner of agriculture, the secretary of state, the president of the senate, the speaker of the house of delegates, the minority leader of the senate and the minority leader of the house of delegates, and that the governor shall be the chairman and the secretary of state shall be the secretary of the commission.

Section 2 defines the words commission, bonds, project, cost of project, rent and rental.

Section 3 contains twelve specific grants of power and authority to the commission, among which are the power to sue and be sued; to acquire in the name of the commission or of the state, by purchase or otherwise, real property or rights or easements necessary or convenient for the corporate purposes of the commission; to acquire, hold and dispose of personal property for its corporate purposes; to make contracts and to execute all instruments necessary or convenient to exercise the powers of the commission; to construct a building or buildings on real estate acquired or owned by it in the City of Charleston; to acquire and construct a warehouse in Kanawha County for the West Virginia Alcoholic Beverage Control Commission; to acquire or construct buildings and additions to buildings for the care of patients, guests and inmates at hospitals under the jurisdiction and supervision of the department of health and at institutions under the jurisdiction and supervision of the commissioner of public institutions and to formulate plans and programs for the ordered and timely capital improvements of all such hospitals and institutions and state capital buildings; to charge rentals for the use of any of its projects; and to issue negotiable bonds for the purpose of financing its projects.

Section 7 empowers the commission to raise the cost of a project by the issuance of state revenue bonds payable solely from a special fund provided by the statute, such bonds to bear interest at the rate of not more than 4%, payable semi-annually and to mature in not more than 25 years from their date, in denominations to be determined by the commission, and to be exempt from taxation by the State or any county or municipality within the State and provides that the amount of all such bonds at any time outstanding for all authorized projects shall not exceed the sum of $25,000,000.00, and that no such bonds shall be issued unless and until approved by concurrent resolution of the Legislature.

From the foregoing provisions, it is manifest that the principal object of the statute is to provide for the construction of buildings for specified purposes and to provide for the payment of the designated projects by the issuance and sale of the bonds authorized by the statute.

The defendant attacks the constitutionality of the statute on the specific ground that the commission is composed of members of the executive and the legislative departments of the government in violation of the provisions of Article V of the Constitution of this State.

The petitioners assert the constitutionality of the statute but insist that if the provision which relates to the membership of the commission is unconstitutional the remaining portions of the act, being separable, constitute a valid and constitutional statute.

Article V of the Constitution of this State, which has been considered by this Court in many cases, declares that ''The Legislative, Executive and Judicial Departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the Legislature.''

That language is clear and free from ambiguity and its requirement of the separation of the powers of government must be strictly enforced.

In an early case this Court declared that the legislative, executive and judicial departments of government must be kept separate and distinct and that each must be protected in its legitimate sphere of action. *State ex rel. Miller v. Buchanan,* 24 W. Va. 362. It has also said that no question can be raised as to the plain meaning of the Article, *State v. Huber,* 129 W. Va. 198, 40 S. E. 2d 11, 168 A.L.R. 808, and that its

plain language calls not for construction but only for obedience. *Hodges v. Public Service Commission,* 110 W. Va. 649, 159 S. E. 834; *State ex rel. Richardson v. The County Court of Kanawha County,* 138 W. Va. 885, 78 S. E. 2d 569.

In *Springer v. Government of the Philippine Islands,* 277 U. S. 189, 48 S. Ct. 480, 72 L. Ed. 845, in holding unconstitutional Acts of the Philippine Legislature creating a coal company and a bank, stock of which was owned by the Philippine Government, which provided that the power to vote the stock shall be vested in a committee in one case and in a board of control in another, the membership of which consisted of the governor-general, the president of the senate and the speaker of the house of representatives, the court said that the voting of the stock in the election of directors and managing agents of such corporations was an executive function and that the attempt to repose it in legislative officers violated the Philippine Organic Act. In discussing that act the court said:

"Thus the Organic Act, following the rule established by the American constitutions, both state and federal, divides the government into three separate departments—the legislative, executive and judicial. Some of our state constitutions expressly provide in one form or another that the legislative, executive and judicial powers of the government shall be forever separate and distinct from each other. Other constitutions, including that of the United States, do not contain such an express provision. But it is implicit in all, as a conclusion logically following from the separation of the several departments. See *Kilbourn v. Thompson,* 103 U. S. 168, 190-191. And this separation and the consequent exclusive character of the powers conferred upon each of the three departments is basic and vital—not merely a matter of governmental mechanism. That the principle is implicit in the Philippine Organic Act does not admit of doubt. See *Abueva v. Wood,* 45 Phil. Rep. 612, 622, 628 et seq.

"It may be stated then, as a general rule inherent in American constitutional system, that, unless otherwise expressly provided or incidental to the powers conferred, the legislature cannot exercise either executive or judicial power; the executive cannot exercise either legislative or judicial power; the judiciary cannot exercise either executive or legislative power. The existence in the various constitutions of occasional provisions expressly giving to one of the departments powers which by their nature otherwise would fall within the general scope of the authority of another department emphasizes, rather than casts doubt upon, the generally inviolate character of this basic rule."

In *O'Donoghue v. United States,* 289 U. S. 516, 53 S. Ct. 740, 77 L. Ed. 1356, the opinion contains these pertinent passages:

"The Constitution, in distributing the powers of government, creates three distinct and separate departments—the legislative, the executive, and the judicial. This separation is not merely a matter of convenience or of governmental mechanism. Its object is basic and vital, *Springer v. Philippine Islands,* 277 U. S. 189, 201, 72 L. ed. 845, 849, 48 S. Ct. 480, namely, to preclude a commingling of these essentially different powers of government in the same hands. * * * .

"If it be important thus to separate the several departments of government and restrict them to the exercise of their appointed powers, it follows, as a logical corollary, equally important, that each department should be kept completely independent of the others—independent not in the sense that they shall not cooperate to the common end of carrying into effect the purposes of the Constitution, but in the sense that the acts of each shall never be controlled by, or subjected, directly or indirectly, to, the coercive influence of either of the other departments. James Wilson, one of the framers of the Constitution and a justice of this court, in one of his law lectures said that

the independence of each department required that its proceedings 'should be free from the remotest influence, direct or indirect, of either of the other two powers.' 1 Andrews, Works of James Wilson (1896) p. 367. And the importance of such independence was similarly recognized by Mr. Justice Story when he said that in reference to each other, neither of the departments 'ought to possess, directly or indirectly, an overruling influence in the administration of their respective powers.' 1 Story, Const. 4th ed. § 530. To the same effect, The Federalist (Madison) No. 48. And see *Massachusetts v. Mellon*, 262 U. S. 447, 488, 67 L. ed. 1078, 1085, 43 S. Ct. 597.''

In considering the importance of provisions relating to the separation of the departments of government, the Supreme Court of the United States in *Kilbourn v. Thompson*, 103 U. S. 168, 26 L. Ed. 377, said: ''It is believed to be one of the chief merits of the American system of written constitutional law, that all the powers intrusted to government, whether State or national, are divided into the three grand departments, the executive, the legislative, and the judicial; That the functions appropriate to each of these branches of government shall be vested in a separate body of public servants, and that the perfection of the system requires that the lines which separate and divide these departments shall be broadly and clearly defined. It is also essential to the successful working of this system that the persons intrusted with power in any one of these branches shall not be permitted to encroach upon the powers confided to the others, but that each shall by the law of its creation be limited to the exercise of the powers appropriate to its own department and no other.''

To the same effect, in discussing the language of Article V of the Constitution of this State, are these statements of this Court in *Hodges v. Public Service Commission*, 110 W. Va. 649, 159 S. E. 834:

''The phraseology of the article follows that of the constitutions of Virginia and other older states. The framers of these older constitutions were disciples of such great political teachers as Blackstone, Montesquieu and Paley, who had declared that in order to prevent arbitrary conduct by those in control, the legislative, executive and judicial powers must be kept separate. See Story on the Constitution, (5th Ed.), ch. VII. These teachings had been exemplified in the division of governmental power practiced in England. Hamilton asserted: 'There is no liberty if the powers of judging be not separated from the legislative and executive powers.' His expression was but the common thought of his contemporaries. See Willoughby, *supra,* sec. 1058. Bryce, The American Commonwealth, 1 Vol., p. 26. So thoroughly were these early statesmen imbued with this idea, that the very first resolution passed in the convention which framed our national constitution, called for a separation of governmental powers. Story refers to this division as 'a fundamental proposition', Cooley as a 'fundamental principle', and Ordronaux as 'this fundamental truth'. (Const. Leg. 344). 'All writers on constitutional law,' said Smith, J., in *The State v. Johnson,* 61 Kan. 803, 814, 'are agreed that the functions of the three departments should be kept as distinct and separate as possible.'

''This historical background is reflected perfectly in the constitution of West Virginia. The separation of powers prescribed in article V is confirmed and consummated in other articles of the constitution, namely, article VI vests the legislative power in a senate and house of delegates; article VII forms the executive department, consisting of the governor, secretary of state, state superintendent of free schools, auditor, treasurer and the attorney general; and article VIII lodges the judicial power of the state 'in a supreme court of appeals, in circuit courts and the judges thereof, in such inferior tribunals as herein authorized and in justices of the peace.' * * * . The inhibition in

article V against the exercise of dual authority is specific. Recognizing the force of that inhibition, this court said that it 'necessarily follows' if an act 'in any degree requires the circuit court to exercise legislative powers, it is to that extent void.' *Shepherd v. Wheeling,* 30 W. Va. 479, 481.'' See also *Farley v. Graney,* 146 W. Va. 22, 119 S. E. 2d 833; *The West Virginia State Bar v. Earley,* 144 W. Va. 504, 109 S. E. 2d 420; *State ex rel. Winter v. Brown,* 143 W. Va. 617, 103 S. E. 2d 892; *State v. Huber,* 129 W. Va. 198, 40 S. E. 2d 11, 168 A.L.R. 808; *Harbert v. The County Court of Harrison County,* 129 W. Va. 54, 39 S. E. 2d 177; *Sims v. Fisher,* 125 W. Va. 512, 25 S. E. 2d 216; *Danielley v. City of Princeton,* 113 W. Va. 252, 167 S. E. 620; *State ex rel. Baker v. County Court of Tyler County,* 112 W. Va. 406, 164 S. E. 515; *Price v. City of Moundsville,* 43 W. Va. 523, 27 S. E. 218, 64 Am. St. Rep. 878; *Shephard v. Wheeling,* 30 W. Va. 479, 4 S. E. 635; *Slack v. Jacob,* 8 W. Va. 612; *Bridges v. Shallcross,* 6 W. Va. 562; *Giss v. Jordan,* 82 Ariz. 152, 309 P. 2d 779; *State ex rel. Black v. Burch,* 226 Ind. 445, 80 N. E. 2d 294, 80 N. E. 2d 560; *Book v. State Office Building Commission,* 238 Ind. 120, 149 N. E. 2d 273; *Sibert v. Garrett,* 197 Ky. 17, 246 S. W. 455; *Ashmore v. Greater Greenville Sewer District,* 211 S. C. 77, 44 S. E. 2d 88, 173 A.L.R. 397; *Spartanburg County v. Miller,* 135 S. C. 348, 132 S. E. 673; 16 Am. Jur. 2d, Constitutional Law, Sections 210 and 214.

In *State v. Huber,* 129 W. Va. 198, 40 S. E. 2d 11, 168 A.L.R. 808, this Court, with reference to the doctrine of the separation of the powers of government, used this language: ''The separation of these powers; the independence of one from the other; the requirement that one department shall not exercise or encroach upon the powers of the other two, is fundamental in our system of Government, State and Federal. Each acts, and is intended to act, as a check upon the others, and thus a balanced system is maintained. No theory of government has been more loudly acclaimed.''

In *Danielley v. City of Princeton,* 113 W. Va. 252, 167 S. E. 620, in holding a water power act of the Legislature unconstitutional and declaring that the Legislature can not commit to the judiciary powers which are primarily executive, this Court said: "The legislative, executive and judicial powers, under the Constitution, are each in its own sphere of duty, independent of and exclusive of the other; so that whenever a subject is committed to the discretion of the legislative or executive department, the lawful exercise of that discretion cannot be controlled by the judiciary. * * * . This inhibition is so well established that it should be known even to the sciolist."

In the well considered case of *Book v. State Office Building Commission,* 238 Ind. 120, 149 N. E. 2d 273, the Court considered an Indiana statute relating to a state office building commission, the membership of which by a provision of the statute was composed of members of the Legislature and the governor and the lieutenant-governor. In holding that provision of the statute unconstitutional because violative of an article of the constitution of that state which divided the legislative, executive and judicial powers of the government into three separate departments and declared that no person, charged with official duties under one of such departments, should exercise any of the functions of another except as otherwise expressly provided, the Court, after mentioning certain duties imposed upon the commission, including the duty to employ a director and assistants necessary to carry out the provisions of the act and to fix the salaries of all employees and agents of the commission, used this pertinent language:

"The foregoing, as well as other duties not mentioned, are clearly acts exercised in the enforcement of the State Office Building Act for the benefit of the public, and the duties and functions required to be performed in carrying out the provisions thereof rest within the executive-administrative department of the

State Government. *Tucker v. State,* 1941, 218 Ind. 614, 700, 701, 35 N. E. 2d 270, 303; *Morgan v. Tennessee Valley Authority,* 1940, 6 Cir., 115 F. 2d 990, 994, certiorari denied 312 U. S. 701, 61 S. Ct. 806, 85 L. Ed. 1135; *Bramlette v. Stringer,* 1938, 186 S. C. 134, 149, 195 S. E. 257, 263, 264.''

The opinion also contains the statements that under the provisions of the act ''the executive power of appointment, administration, and enforcement thereof, is vested in the Commission, and when performed by the legislative members, is not incidental to their legislative power; instead the primary purpose of the Act requires the exercise of judgment and discretion in executing a law enacted by the Legislature. The Legislature may enact, but it cannot execute laws. That is the duty of the executive department. The Legislature here has attempted to confer executive power upon a Commission, the majority of which is composed of its own members, and to impose upon the legislative members thereof duties which they cannot constitutionally exercise. *Myers v. United States,* 1926, 272 U. S. 52, 47 S. Ct. 21, 71 L. Ed. 160; *Springer v. Government of Philippine Islands, supra,* 1928, 277 U. S. 189, 48 S. Ct. 480, 72 L. Ed. 845; *State ex rel. Black v. Burch, supra,* 1948, 226 Ind. 445, 80 N. E. 2d 294, 560, 81 N. E. 2d 850; *Stockman v. Leddy,* 1912, 55 Colo. 24, 129 P. 220; *Simpson v. Hill,* 1927, 128 Okl. 269, 263 P. 635, 56 A.L.R. 706.''

The opinion in that case also contains these applicable pronouncements:

''If members of the Legislature may be appointed as members of Boards which exercise functions within the executive-administrative department of Government, the door is then open for the Legislature to enter and assume complete control thereof. In fact, if the present provisions for membership on the Commission are valid, the Legislature, by having six of its members on the Commission, could control its every act, and

thus completely usurp the authority of the Governor to 'faithfully execute' the laws enacted by the Legislature. Article 5, § 16, Constitution of Indiana.

"For the reasons above stated no member of the Legislature, including those presently serving as members of the State Budget Committee, is eligible to serve as a member of the Commission.

"It follows that that part of § 2 of ch. 221 of the Acts of 1953, being § 60-2102, Burns' 1951 Replacement (Cum. Supp.), which provides that certain members of the Legislature, including those who are now members of the Budget Committee, shall be members of the Commission, is in violation of the provisions of Art. 3, §1, of the Constitution of Indiana because it attempts to confer executive-administrative duties upon members of the Legislature and is, therefore, void and of no force and effect. *State ex rel. County Welfare Bd. of Starke County v. Starke Circuit Court,* Ind. Sup. 1958, 147 N. E. 2d 585, 589; *State ex rel. Black v. Burch, supra,* 1948, 226 Ind. 445, 80 N. E. 2d 294, 560, 81 N. E. 2d 850; *Tucker v. State, supra,* 1941, 218 Ind. 614, 640, 663, 35 N. E. 2d 270, 279, 288."

"An officer whose duties appertain exclusively to one department of government may not exercise power and perform functions and duties appertaining exclusively to another department, where the constitution provides that no member of any of the three departments, legislative, executive, and judicial, shall exercise any power properly belonging to either of the others." 16 Am. Jur. 2d, Constitutional Law, Section 214.

From the above cited decisions of this Court and other appellate courts it is manifest that the powers granted and the duties imposed upon the State Building Commission of West Virginia by the legislative enactment here involved, Chapter 8, Acts of the Legislature, Regular Session, 1966, are executive or administrative and not legislative in character and that

the provision of Section 1 of the statute that the president of the senate, the speaker of the house of delegates, the minority leader of the senate and the minority leader of the house of delegates shall be members of the commission is violative of Article V of the Constitution of this State in that it attempts to confer and impose executive or administrative powers and duties upon those members of the Legislature and for that reason is null and void and of no force and effect. In enacting the statutory provision that members of the Legislature shall be members of the State Building Commission the Legislature has attempted to confer executive or administrative power and impose executive or administrative duties upon the legislative members of the commission which by reason of the express inhibition in Article V of the Constitution of this State they can not constitutionally exercise or perform.

It is well settled that it is the duty of a court to endeavor to ascertain a proper basis to sustain a statute when its constitutionality is assailed, *Nuckols v. Athey,* 149 W. Va. 40, 138 S. E. 2d 344; *State ex rel. Slatton v. Boles,* 147 W. Va. 674, 130 S. E. 2d 192; *State v. Schoonover,* 146 W. Va. 1036, 124 S. E. 2d 340; *Appalachian Power Company v. The County Court of Mercer County,* 146 W. Va. 118, 118 S. E. 2d 531; *Farley v. Graney,* 146 W. Va. 22, 119 S. E. 2d 833; *The Board of Education of Wyoming County v. The Board of Public Works,* 144 W. Va. 593, 109 S. E. 2d 552; *Kanawha County Public Library v. The County Court of Kanawha County,* 143 W. Va. 385, 102 S. E. 2d 712. It is equally well established that it is the duty of a court to declare a statute invalid if its unconstitutionality is clear. *Nuckols v. Athey,* 149 W. Va. 40, 138 S. E. 2d 344; *Tanner v. Premier Photo Service, Inc.,* 147 W. Va. 37, 125 S. E. 2d 609; *Appalachian Power Company v. The County Court of Mercer County,* 146 W. Va. 118, 118 S. E. 2d 531; *State ex rel. Winter v. Brown,* 143 W. Va. 617, 103 S. E. 2d 892; *State ex rel. Dewey Portland Cement Company v. O'Brien,* 142 W.

Va. 451, 96 S. E. 2d 171; *Staley v. Wayne County Court,* 109 W. Va. 251, 153 S. E. 589.

The invalidity of the provision of Section 1 of the statute which designates the foregoing legislators members of the commission does not, however, adversely affect or invalidate the remaining portion of the statute. The principle is well settled by many decisions of this Court that a statute enacted by a duly constituted Legislature in lawful, constitutional session, may contain both constitutional and unconstitutional provisions which in substance are distinct and separable so that some may stand though others must fall. And this is true whether or not the statute in question contains a separability clause. *Nuckols v. Athey,* 149 W. Va. 40, 138 S. E. 2d 344; *State ex rel. Heck's Discount Centers, Inc. v. Winters,* 147 W. Va. 861, 132 S. E. 2d 374; *State ex rel. The County Court of Cabell County v. Battle,* 147 W. Va. 841, 131 S. E. 2d 730; *State v. Miller,* 145 W. Va. 59, 112 S. E. 2d 472; *State v. Heston,* 137 W. Va. 375, 71 S. E. 2d 481; *Lingamfelter v. Brown,* 132 W. Va. 566, 52 S. E. 2d 687; *State v. Huber,* 129 W. Va. 198, 40 S. E. 2d 11, 168 A.L.R. 808; *Harbert v. County Court of Harrison County,* 129 W. Va. 54, 39 S. E. 2d 177; *State v. Sixo,* 77 W. Va. 243, 87 S. E. 267.

In *State v. Heston,* 137 W. Va. 375, 71 S. E. 2d 481, this Court held in point 6 of the syllabus that ''A statute may contain constitutional and unconstitutional provisions which may be perfectly distinct and separable so that some may stand and the others will fall; and if, when the unconstitutional portion of the statute is rejected, the remaining portion reflects the legislative will, is complete in itself, is capable of being executed independently of the rejected portion, and in all other respects is valid, such remaining portion will be upheld and sustained.''; and in support of that pronouncement cited these authorities: *Meisel v. Tri-State Airport Authority,* 135 W. Va. 528, 64 S. E. 2d 32; *Lingamfelter v. Brown,* 132 W. Va. 566, 52 S. E.

2d 687; *The County Court of Raleigh County v. Pain-*
*ter,* 123 W. Va. 415, 15 S. E. 2d 396; *Prichard v. De-*
*Van,* 114 W. Va. 509, 172 S. E. 711; *Fairmont Wall*
*Plaster Company v. Nuzum,* 85 W. Va. 667, 102 S. E.
494; *State ex rel. Dillon v. County Court of Braxton*
*County,* 60 W. Va. 339, 55 S. E. 382; *People ex rel.*
*Stuckart v. Knoph,* 183 Ill. 410, 56 N. E. 155; *Loeb v.*
*Trustees of Columbia Township,* 179 U. S. 472, 21 S.
Ct. 174, 45 L. Ed. 280; *Berea College v. Commonwealth*
*of Kentucky,* 211 U. S. 45, 29 S. Ct. 33, 53 L. Ed. 81;
11 Am. Jur., Constitutional Law, Section 152; Cooley,
Constitutional Limitations, Eighth Edition, Vol. 1,
p. 361.

In *Lingamfelter v. Brown,* 132 W. Va. 566, 52 S. E.
2d 687, this Court, referring to the rule applicable to
a statute containing distinct and separable provisions,
some of which are constitutional and others of which
are unconstitutional, said: ''In the case of *Loeb v.*
*Trustees of Columbia Township,* 179 U. S. 472, 45
L. ed. 280, 21 S. Ct. 174, the applicable rule is stated
as follows: 'One part [of a statute] may stand, while
another will fall, unless the two are so connected, or
dependent on each other in subject matter, meaning,
or purpose, that the good cannot remain without the
bad. The point is not whether the parts are contained
in the same section, for the distribution into sections
is purely artificial, but whether they are essentially
and inseparably connected in substance,—whether the
provisions are so interdependent that one cannot oper-
ate without the other.' See *Shulman Co. v. Sawyer*
(Va.), 189 S. E. 344; 11 Am. Jur., Constitutional Law,
Section 156; 6 R.C.L., Constitutional Law, Section
121. If the other parts of a statute are not dependent
upon the void part, the valid portions of the statute
may remain in force. *County Court v. Painter,* 123
W. Va. 415, 15 S. E. 2d 396; *Berea College v. Kentucky,*
211 U. S. 45, 53 L. ed. 81, 29 S. Ct. 33.''

In *Prichard v. DeVan,* 114 W. Va. 509, 172 S. E. 711,
this Court held in point 5 of the syllabus that ''When

a part of an Act is invalid but the remainder reflects the legislative intent and is complete in itself, then the remainder will be upheld.''

In *State ex rel. Dillon v. County Court of Braxton County,* 60 W. Va. 339, 55 S. E. 382, point 6 of the syllabus states that ''A legislative act, containing an illegal exception, is not vitiated by the exception, on the ground of want of generality, if, upon the elimination thereof, what remains is in such condition that, had it been so enacted originally, it would have been a complete and general law.''

In 16 Am. Jur. 2d, Constitutional Law, Section 181, concerning constitutional and unconstitutional statutory provisions, it is stated ''that a statute may be constitutional in one part and unconstitutional in another and that if the invalid part is severable from the rest, the portion which is constitutional may stand while that which is unconstitutional is stricken out and rejected.''

The Indiana statute under consideration in *Book v. State Office Building Commission,* 238 Ind. 120, 149 N. E. 2d 273, closely resembles the statute now before this Court. In holding invalid the provisions of that statute making members of the Legislature members of a state office building commission, an executive or administrative instrumentality, and in holding the remaining portions of the statute constitutional and valid, the Indiana Court said that the elimination of the unconstitutional provision would not broaden the scope of the act and that it could not be said that the Legislature would not have passed it had it known that members of the Legislature were not qualified to serve as members of the commission.

It is manifest that the Legislature would have enacted the statute challenged in this proceeding without the provision which designated members of the Legislature members of the commission. Indeed, the original act, Chapter 43, Acts of the Legislature, Regular

Session, 1939, provided that the commission should consist of the governor, the attorney general, and the director of the budget, all of whom are members of the executive department of the government; and the commission created by that act, which is the present identical commission under another name, existed and functioned as an active and valid administrative instrumentality without any change in its membership until the president of the senate and the speaker of the house of delegates were made members by Section 1, Article 6, Chapter 16, Acts of the Legislature, Regular Session, 1965; and that statute remained in force and effect until it was amended by the present statute which added the treasurer, the auditor, the commissioner of agriculture, the secretary of state as executive department members, eliminated from membership the director of the budget and made the minority leader of the senate and the minority leader of the house of delegates additional members of the commission. It is also manifest that the constitutional and unconstitutional provisions of the present statute are perfectly distinct and separable so that some may stand and one will fall even though the present statute contains no separability clause, and that, when the unconstitutional portion is rejected, the remaining portion is valid for the reason that it reflects the legislative will, is complete in itself, and is capable of being executed independently of the rejected portion of the statute.

It is clear beyond question that the main purpose of the present statute is the creation of a commission to accomplish construction of certain designated buildings and to finance the cost of that project by the issuance of state building revenue bonds of the State and that the personnel and nature of the members of the commission are comparatively immaterial and relatively unimportant as compared to the fulfillment of the main objects and purposes of the statute. This Court, therefore, holds that notwithstanding the in-

validity of the provision of Section 1, Article 6, Chapter 5, Code, 1931, as amended, being Section 1, Chapter 8, Acts of the Legislature, Regular Session, 1966, which declares that the president of the senate, the speaker of the house of delegates, the minority leader of the senate and the minority leader of the house of delegates shall be members of the State Building Commission of West Virginia, and notwithstanding the rejection of that provision because violative of Article V of the Constitution of this State, the remaining portion of the statute is constitutional and its validity will be and it is upheld and sustained inasmuch as that portion of the statute is distinct and separable from the rejected portion, reflects the legislative will, is complete in itself and is capable of being executed independently of the rejected portion.

The writ of mandamus, as prayed for in the petition, is awarded.

*Writ awarded.*